Ricardo FELICIANO and Renaldo
Santiago, Plaintiffs,

v.

Larry E. DUBOIS, et al., Defendants.

Civ. A. No. 93–11557–REK.

United States District Court,
D. Massachusetts.

Feb. 10, 1994.

Ricardo Feliciano, pro se.

Renaldo Santiago, pro se.

Edward L. Toro, Mass. Dept. of Atty. Gen., Medicaid Fraud Control Unit, Boston, MA, for Scott Harshbarger.

Bruce R. Henry, Morrison, Mahoney & Miller, Boston, MA, for Emergency Medical Service Association, (EMSA).

John Egan, Posternak, Blankstein & Lund, Boston, MA, for James Pingeon.

## MEMORANDUM AND ORDER

KEETON, District Judge.

This case is one of many now pending in this court that present a common pattern of jurisdictional, substantive, procedural, and pragmatic issues the court may, and perhaps must, consider in order to promote "just, speedy, and inexpensive determination," Fed. R.Civ.P. 1.

This Memorandum explains a provisional Order regarding these recurring issues, which I expect to apply in this and like cases before me in the absence of new developments in statutes, rules of procedure, and precedents bearing on these matters. A separate Memorandum and Order, to be issued in the near future, will address issues distinctive to this case that are raised by pending motions.

### I. *Factual Background*

**A. *Allegations of a Clearly Identified Incident***

The handwritten complaint in this case is 24–pages long. Submitted with it, under a cover sheet entitled "Exhibits # 1 through # 29 ..." are 26 pages that do not include exhibits numbered 11, 21, 24, and 26.

Plaintiffs are two inmates in the custody of the Massachusetts Department of Correc-tion, incarcerated at the Massachusetts Correctional Institution, Cedar Junction, in Walpole, Massachusetts ("M.C.I.–Cedar Junction"). Plaintiffs, proceeding *pro se* and *in forma pauperis,* bring this action against the Commissioner of Correction and 24 named defendants in their individual and official capacities. Plaintiffs purport also to sue other persons under designations "et al., counsels" and "et al., Defendants." Plaintiffs base their claims on allegations regarding one incident identified by date (an inmate fight at M.C.I.–Cedar Junction on July 4, 1992, Compl. ¶ 23, allegedly characterized by correctional officials as racially motivated), disciplinary proceedings against the plaintiffs because of their alleged participation in that fight, Compl. ¶¶ 23–31, and many less focused allegations regarding conditions of confinement in the Departmental Disciplinary Unit ("DDU") in which each of the plaintiffs has been confined after the incident of July 4, 1992. Compl. ¶¶ 32–39.

Plaintiffs allege that, as a result of the incident of July 4, 1992, M.C.I.–Cedar Junction was locked down for one week. Compl. Exh. 23. A disciplinary report was issued against both men for their alleged participation in the fight. Compl. ¶ 23. DDU hearings were held. Compl. ¶ 23. Santiago was represented in his disciplinary hearing by Attorney Stephen J. Dattis. Compl.Exh. 9. According to the disciplinary hearing report, Feliciano did not request representation. Compl.Exh. 8.

Both men pled not guilty. Both were found guilty of participating in the disturbance. Compl. ¶¶ 24, 27. On or about October 2, 1992, Feliciano was removed from the general population and placed in the DDU control unit for nine months. Compl. ¶ 27, Exh. 22. On or about October 9, 1992, Santiago was placed in the DDU control unit for one year. Compl. ¶ 27, Exh. 25.

The plaintiffs allege that they were deprived of their constitutional rights to due process of law during the DDU hearings, and freedom from cruel and unusual punishment and access to the courts while in DDU confinement. Compl. ¶¶ 30, 34.

The complaint alleges that

it was a known fact that Larry E. DuBois, Michael T. Maloney, Ronald T. Duval, Mark Powers, John Marshall, Eugene Marsolais, Medical Staffs of EMSA, Duane MacEachern, Ed Doolin, Thomas Garriga, Donna Phillips, Nancy Salters, Brian Gilligan, Glenn Gaspar, Officer Cahill, Robert Bailer, Chris Crown, Paul Walsh, and Phillip Harrington all ... [knew and should have known] that when the First Hispanic inmate was assaulted and battered by numerous of Black inmates in the Chow Hall that there would be a racial problem coming up ahead. In fact, ... [two defendants as hearing officers] knew but withheld that information from both plaintiffs Feliciano and Santiago. [Neither did] these officers consider the possibility of provocation or self defense [during the DDU hearing].
Compl. ¶ 28.

## B. General Allegations of Conditions of Confinement

In later paragraphs the complaint alleges that the two named plaintiffs and other inmates were subjected to conditions of confinement that plaintiffs seek to challenge. Among these paragraphs are allegations, not specific as to time or as to the inmates and defendants allegedly involved, about reduced opportunities for exercise, reduced opportunities to receive stamps from family and mail from other inmates, tampering with personal and legal mail, inadequate access to law library, legal materials, and assistance of other inmates more knowledgeable about legal matters, inadequate toiletry supplies, inadequate access to rehabilitative programs, inadequately prepared and inadequately nutritious meals, serving of food contaminated by insects, unsanitary shower facilities, water containing chemicals causing skin problems, smoking by correctional officers near inmates when inmates are denied smoking privileges, wearing of watches and earrings by correctional officers even though inmates were forced to send all such properties out of the institution, inadequate ventilation, inadequate light and windows, inadequate medical care, improper practices of anal and genital searches, deprivation of visiting privileges, inadequate heat, deprivation of personal and legal telephone calls, the practice by correc-

tional officers of mental and psychological games as a form of punishment, inadequate training of staff and use of staff that are stressed out, deprivation of accumulated time credits, deprivation of inmate rights to practice religion, singling out inmates and handcuffing and manhandling inmates during cell searches, use by correctional officers of vulgar and disrespectful language, and invasions of privacy and physician-patient privilege by having a correctional officer present during inmate interviews with medical staff. Compl. ¶¶ 29–40.

## C. Allegations Characterizing Plaintiffs' Claims

Following paragraph 40 of the complaint is a caption, "First Cause of Action." No other caption identifying an additional cause of action appears in the complaint. The remaining paragraphs of the complaint do, however, allege violations of plaintiffs' rights to protection under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments of the Constitution of the United States, Articles I, XII, and XIV of the [Massachusetts] Declaration of Rights, 42 U.S.C. § 1983, State and Federal Laws, State Regulations, and the federal RICO statute. These allegations are not tied to particular factual allegations of the numbered paragraphs of the complaint.

## II. Action on a Request for Appointment of Counsel

Plaintiff Ricardo Feliciano moves for appointment of counsel. There is nothing in this motion to suggest that appointment of counsel is similarly being requested for plaintiff Renaldo Santiago. Even if such a request were made by Feliciano on behalf of Santiago, the court would have to disregard it because an individual who is not an attorney admitted to practice in this court cannot be allowed to represent any other person, any class, or other legal entity.

See, e.g., In re Victor Publishers, Inc., 545 F.2d 285, 286 (1st Cir.1976) (per curiam);

Eagle Associates v. Bank of Montreal, 926 F.2d 1305 (2d Cir.1991);

Covington v. Allsbrook, 636 F.2d 63, 64 (4th Cir.1980) ("Covington as a non-lawyer

is not qualified to represent his fellow inmates").

In support of his motion plaintiff Feliciano makes the following assertions: (1) he is indigent and unable to afford to hire an attorney, (2) he has no access to a law library or legal assistance, (3) his claims have merit and are not frivolous, (4) the legal issues are complex, and (5) he is in no position to investigate his own case.

■ The appointment of counsel in a civil case for an indigent litigant is a matter that lies within the discretion of the court. 28 U.S.C. § 1915(d). "There is no absolute constitutional right to a free lawyer in a civil case." *DesRosiers v. Moran*, 949 F.2d 15, 23 (1st Cir.1991) (citations omitted).

The First Circuit has provided guidance for the exercise of discretion by a district court when faced with a motion for appointment of counsel:

> [a]n indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel. Whether exceptional circumstances exist requires an evaluation of the type and complexity of each case and the abilities of the individual bringing it.... Some factors which courts have found to bear on the particular case include the indigent's ability to conduct whatever factual investigation is necessary to support his or her claim, the complexity of the legal and factual issues involved, and the capability of the indigent litigant to present the case.

*Cookish v. Cunningham*, 787 F.2d 1, 2–3 (1st Cir.1986) (citations omitted).

■ I infer from Feliciano's successful application to proceed *in forma pauperis* that he is unable to afford to hire an attorney. I conclude, however, that the record before me does not support a finding that this case presents, at this stage of pretrial proceedings, exceptional circumstances warranting the appointment of counsel.

■ First, the court must take account of the fact that the court has no authority to commit any financial resources to compensation of appointed counsel in cases within the pattern presented by this case. Also, the numbers of cases within this pattern are substantial, and the burden the court would be imposing on members of the Bar to provide services without compensation by allowing requests for appointment without significant screening is very large. In these circumstances, I conclude that the court should do some initial screening out of claims that are "frivolous" as that term is used in 28 U.S.C. 1915(d) rather than imposing this burden entirely on members of the Bar of this court.

■ Second, when it appears, as it does in this case, that the complaint may include one or more claims as to which the court cannot on the basis of the initial pleadings make a determination as to whether, in addition to frivolous claims, the complaint alleges one or more claims that, if the facts of the complaint are supported by admissible evidence, can be determined only at trial, it is appropriate for the court to use early case management procedures to aid the court in identifying different claims and determining which claims can be determined to be frivolous, which can be determined not to be frivolous and which, if any, require further explanation before they can be placed with reasonable assurance in either category.

■ Third, a court's requiring clarification of claims at an early stage of pretrial proceedings is appropriate so the court can examine more closely those that survive early screening to determine whether they involve complexities of law or disputed fact that warrant appointment of counsel.

Accordingly, in the exercise of discretion, I decline at this time to appoint counsel to represent Ricardo Feliciano.

### III. *Procedures for Clarification of Claims and Prompt Dismissal of Frivolous Claims*

■ The case management procedures used in early screening may appropriately be either those in place under applicable statutes, Federal Rules, and Local Rules of this district or procedures more distinctively tailored to the case before the court and within the scope of discretion allowed the court under the applicable statutes, precedents, and Federal and Local Rules. Reasons for

this conclusion are explained in Parts A–C, immediately below.

## A. *The Statutory Mandate Regarding Frivolous Claims*

This case is one to which 28 U.S.C. 1915(d) applies.

 Insofar as plaintiffs allege clearly that they are asserting claims based on disciplinary proceedings against them arising out of a specified event (the inmate fight of July 4, 1992) and also identify a defendant or defendants whose own acts in the course of those proceedings are challenged, I conclude that plaintiffs have at least asserted, against each of the defendants so identified, a claim that survives the statutorily mandated initial screening.

 I conclude also, however, that the presence of at least one claim (against one or more identified defendants) is not sufficient to preclude the court from proceeding to determine whether the complaint purports to allege (either against the same defendants or against others), other claims that the court may appropriately screen out as early in these proceedings as any claims can be identified as frivolous. I read 28 U.S.C. 1915(d) as not only authorizing dismissal of an entire complaint when all claims it asserts are frivolous but also authorizing dismissal of all claims that can be determined at an early stage in proceedings to be frivolous even if not all claims alleged in the complaint can then be determined to be frivolous.

 In the alternative, even if 28 U.S.C. 1915(d) does not itself grant this authority, I conclude that at the least this statute does not contain any implicit prohibition against early dismissal of frivolous claims when the complaint also states one or more claims not then determined to be frivolous. Absent such a prohibition, implicit authority for dismissal of frivolous claims appears in rules and precedents discussed below.

 When invoking the statutory authority for dismissal of frivolous claims that appears in 28 U.S.C. 1915(d), or the implicit authority in rules and precedents discussed below, a court must be sensitive to the body of precedent declaring that a *pro se* complaint is to be construed liberally in favor of a plaintiff and by "less stringent standards than [those that apply to] formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam). A liberal reading in favor of a plaintiff, however, will not be sufficient to salvage a complaint that does not supply enough information about the asserted facts and the asserted legal basis for a claim to enable the court and opposing parties to identify events or circumstances the pleader is attempting to invoke as the basis for the claim and what body of law the pleader is attempting to invoke in support of the claim.

 Especially is it appropriate for a court to examine the complaint carefully in search of indications of some factually and legally supportable basis of claim when the complaint attempts to invoke the subject matter jurisdiction of a court of limited jurisdiction, such as a United States district court. Even if particularity-of-claim requirements are relaxed in other respects (see Part III.C and III.D below), a court always has an obligation to consider, even on its own initiative as well as on motion of an opposing party, whether it has subject matter jurisdiction.

## B. *Limits on Supplemental Jurisdiction Over State–Law Claims*

 The last preceding point is especially relevant when the complaint asserts, as does the complaint now before the court, that many of the conditions of confinement alleged in the complaint (see Part I.B above) constitute violations of state law. Even if plaintiffs are able to support these allegations factually, violations of rights protected under state law ordinarily do not constitute conduct for which a remedy may be awarded in a United States district court. Under 42 U.S.C. § 1983, allegations (and even proof) of violations of state or local law are not alone sufficient to support a claim under federal law. *E.g., Limerick v. Greenwald,* 749 F.2d 97, 100 (1st Cir.1984). A United States district court should not continue to exercise supplemental jurisdiction over state law

claims when it has determined at an early stage that any alleged federal claim is frivolous. *See generally, e.g., United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725–27, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966).

## C. *Particularity-of-Complaint Requirements*

■ The federal law regarding particularity-of-complaint requirements is currently quite unsettled.

The Supreme Court has held that general notice pleading consistent with Rule 8(a) of the Federal Rules of Civil Procedure is sufficient to state a claim against a municipality based on inadequate training. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993). The Court explained:

> The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

*Id.* —— U.S. at ——, 113 S.Ct. at 1163 (citing *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The Court reserved for future determination, however, the extent to which precedents in the Courts of Appeals and district courts regarding particularity of pleadings in other section 1983 cases may be overturned by the Supreme Court:

> [U]nlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983 ... We thus have no occasion to consider whether our qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials.

*Id.* —— U.S. at ——, 113 S.Ct. at 1162.

In these circumstances, the extent to which this court can now rely upon decisions predating *Leatherman* is in doubt. Before *Leatherman* was decided, a long line of precedents in the First Circuit supported dismissal of a complaint that purported to allege claims under 42 U.S.C. § 1983 but failed to set forth at least an outline or summary of facts that, if proved, would entitle the plaintiff to relief.

> *See, e.g., Boston & Maine Corp. v. Town of Hampton,* 987 F.2d 855, 863–64 (1st Cir.), *reh'g denied,* 7 F.3d 281 (1993) (summarizing precedents as they existed just before *Leatherman* was decided);
>
> *The Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989) (quoting *Chongris v. Board of Appeals,* 811 F.2d 36, 37 (1st Cir.1987) (citation and internal quotation marks omitted).

It is not yet clear how much, if any, of this large body of precedent survives *Leatherman.*

## D. *Other Particularity-of-Claim Requirements*

Even if particularity-of-complaint requirements do not survive *Leatherman,* the Court in that case made clear that its holding was based on its interpretation and application of Federal Rules of Civil Procedure. *Leatherman,* —— U.S. at ——, 113 S.Ct. at 1163. The Court added:

> Perhaps if Rules 8 and 9 were rewritten today, claims against municipalities under section 1983 might be subjected to the added specificity requirement of Rule 9(b). But that is a result which must be obtained by the process of amending the Federal Rules, and not by judicial interpretation. In the absence of such an amendment, federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.

*Id.*

■ In these circumstances, I conclude that common practices of invoking particularity-of-*claim* requirements in ways other than dismissing a civil action under a particularity-of-*complaint* requirement are not undermined by *Leatherman* as long as they are otherwise permitted by applicable statutes, rules, and precedents.

■ One example of such a requirement is a motion for summary judgment on

grounds of failure of the complaint to assert a claim within the subject-matter jurisdiction of the court. Such a motion may be presented effectively at a very early stage of proceedings because the grounds asserted for the motion may make immaterial all of the facts that are genuinely disputed. A response by the plaintiffs seeking time for extensive discovery under Fed.R.Civ.P. 56(f) is likely to fail in these circumstances.

■ Moreover, statutory directives and national and local rules encouraging early and rigorous case management to reduce costs of litigation and avoid delay authorize a court, with appropriate notice to the parties, to compel clarification of ambiguous claims.

### E. *Particularity-of-Claim Orders*

■ For the reasons explained above, even if *Leatherman* were construed as precluding a court from requiring of plaintiffs *an amended complaint* that met particularity-of-claim requirements, it probably should not be construed as precluding a court from making an early case management order requiring that, in *some form of written submission to the court* (an amended complaint being only an allowable form and not a required form), the plaintiff clarify ambiguous claims to enable opposing parties and the court to evaluate jurisdictional and other potentially dispositive issues.

■ In exercising such authority, a court must be sensitive to the need for clear notice to the parties of the risk of dismissal if the particularity-of-claim requirement it is imposing is not satisfied. This caution expressed in pre-*Leatherman* decisions remains in place, even if other aspects of these precedents have been modified. Thus, at least this notice aspect of the following passage in a First Circuit precedent has continuing force:

> [A] district court may, in appropriate circumstances, note the inadequacy of the complaint, and, on its own initiative, dismiss the complaint.... Yet *a court may not do so without at least giving plaintiffs notice of the proposed action and affording them an opportunity to address the issues.*

*Street v. Fair,* 918 F.2d 269, 272 (1st Cir. 1990) (emphasis added). *Cf. Pavilonis v. King,* 626 F.2d 1075, 1078 n. 6 (1st Cir.1980) (sua sponte dismissal under Rule 12(b)(6) appropriate, despite lack of notice, where magistrate's report had highlighted deficiencies in complaint).

### IV. *Claims Against Defendants Individually and in Their Official Capacities*

Plaintiffs' claims illustrate recurring issues, and frequent ambiguity of claims, because of general allegations in a complaint that some or all of the defendants are sued both individually and in their official capacities. In this case, the plaintiffs have sued all of the defendants in both their individual and official capacities. Compl. ¶¶ 7–14, 16–21.

### A. *Official–Capacity Suits For Damages*

■ A suit against an officer in his or her official capacity is another way of suing the public entity that the official represents. *Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985). *See also Stratton v. City of Boston,* 731 F.Supp. 42, 46 (D.Mass.1989). My usual practice is to require § 1983 plaintiffs in official-capacity suits to name the entity that may ultimately be liable, rather than the officials, to avoid confusion with individual liability claims. *Stratton,* 731 F.Supp. at 45–46.

In their official capacities, Attorney General Harshbarger and Governor William Weld represent the Commonwealth of Massachusetts. The Commissioner of Correction, the Deputy Commissioner of Correction, three Special Hearing Officers, an attorney from the Massachusetts Department of Correction and numerous correctional officers represent the Department of Correction of the Commonwealth of Massachusetts. Therefore, plaintiffs' claims against the defendants in their official capacities will be treated as claims against the Commonwealth of Massachusetts and the Department of Correction.

■ It is well settled that "neither a State nor its officials acting in their official capacities are 'persons' amenable to suit for monetary damages under 42 U.S.C. § 1983."

*Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989). This grant of immunity to state officials in their official capacities is based on the fact that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Id.* at 70, 109 S.Ct. at 2310. For these reasons, the court will dismiss all monetary claims against the defendants in their official capacities.

### B. *Official–Capacity Suits for Equitable Relief*

 Even when acting in their official capacities,

> state officials are not insulated from suit for declaratory or injunctive relief. Official capacity actions for non-monetary or prospective relief are not treated as suits against the State. Therefore, for purposes of such actions state officials are deemed "persons".

*Charron v. Picano,* 811 F.Supp. 768, 772 (D.R.I.1993) (quoting *Will,* 491 U.S. at 71, n. 10, 109 S.Ct. at 2311, n. 10). Thus, plaintiffs may bring against State officials, including the Commissioner of the Department of Correction, a properly supported claim for injunctive or other equitable relief.

> *See, e.g., Dimarzo v. Cahill,* 575 F.2d 15 (1st Cir.), *cert. denied,* 439 U.S. 927, 99 S.Ct. 312, 58 L.Ed.2d 320 (1978) (court affirmed award of injunctive relief against the state Commissioner of Correction citing the statutory duty to establish and maintain constitutional facilities);
>
> *Libby v. Marshall,* 653 F.Supp. 359 (D.Mass.1986) (remedial order against state defendants was proper in § 1983 action against the county, where it was necessary to remedy unconstitutional conditions at county facility).

### C. *Claims Against Defendants Harshbarger and Weld Individually*

#### 1. *Constitutional Claims under § 1983*

 State officials sued in their individual capacities, are "persons" within the meaning of § 1983 and may be sued for monetary relief. *Hafer v. Melo,* —— U.S. ——, ——,

112 S.Ct. 358, 364, 116 L.Ed.2d 301 (1991). Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

Harshbarger and Weld argue that the claims brought against them individually must be dismissed because the complaint fails to allege factual support, and in any event, the claims cannot stand because Harshbarger and Weld are entitled to qualified immunity.

Plaintiffs' claims, summarized by Weld and Harshbarger are:

> that Defendants Weld and Harshbarger, and 22 other named defendants, knew or should have known the practices and procedures of the DDU "would have violated" the plaintiffs' rights. [Compl. pp. 19–22] ¶ D. Second, they claim that Defendant Weld used the DDU for political motives and personal gain. *Id.,* ¶ I. Third, they claim that all defendants violated laws and regulations "when they all discriminated, harassed, retaliated, conspired, deceived and lied to the plaintiffs." *Id.,* ¶ J. Fourth the plaintiffs claim that all defendants "lied and deceived the public and the courts regarding the truth behind the DDU." *Id.,* ¶ K.

Finally, they claim that all defendants "deprived the plaintiffs of access to the court, legal assistance, visits, phone calls, property, programs, adequate meals, medical care, toiletries and cleaning supplies, personal hygenes [sic], and canteen, correspondence through mail, adquate [sic] hearings according to 103 CMR 421. [illegible], clean healthy areas, and dehumanizing the plaintiffs through the anal and genital searches, and unauthorized positions [sic] and decisions by staff, mistreatment, the conditions of the DDU, and not complying with the Hoffer agreement in Judgement [sic] # 17 in C.A. # 85–71, and

putting the safety of the plaintiffs in danger." *Id.*, ¶ L.

Memorandum in Support of Joint Motion to Dismiss, pp. 3–4 (Docket No. 37)

Despite the numerous claims made by the plaintiffs, they fail to allege any conduct at all that could give rise to plaintiffs' claims against defendants in their individual capacities. The only factual assertion made by plaintiffs is that defendant Harshbarger (and fourteen Department of Correction employees) deprived the plaintiffs of a "full five hours of mandatory exercises as disciplinary sanctions in violation of the [state regulations] 103 CMR 472.09(3), 105 CMR 451.212." Compl. ¶ 35.

There is no *"respondeat superior* liability" in the ordinary sense of that concept under § 1983. That is, a defendant supervisor cannot be held liable for the constitutional violations of a subordinate merely by virtue of the defendant's status as supervisor. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 529, 103 L.Ed.2d 412 (1989); *Consolo v. George,* 835 F.Supp. 49, 50 (D.Mass.1993). In order for a state officer to be properly brought into a suit individually under § 1983, the officer must be shown to have been in some manner personally involved in the alleged deprivation of rights. *El Dia, Inc. v. Hernandez Colon,* 783 F.Supp. 15, 19 (D.P.R.1991), *reversed on other grounds,* 963 F.2d 488 (1st Cir.1992). The First Circuit recognizes two types of supervisory liability under § 1983 based on a defendant's personal involvement in the alleged deprivation of rights.

> The first type requires actual notice of facts at least sufficient to [charge] the official [with reasonable] ... inquiry with respect to the prisoner's complaint. The second type arises when the supervisor has constructive knowledge of prison-wide conditions which he was statutorily obliged to inspect and remedy.

*Husband v. Fair,* No. CIV.A. 86–2865–Z, 1993 WL 343669, at * 4 (D.Mass. Aug. 30, 1993) (citing *Layne v. Vinzant,* 657 F.2d 468 (1st Cir.1981)). *See also Dimarzo v. Cahill,* 575 F.2d 15 (1st Cir.), *cert. denied,* 439 U.S. 927, 99 S.Ct. 312, 58 L.Ed.2d 320 (1978).

Plaintiffs have not alleged factual support for a contention that either Harshbarger or Weld had actual notice of plaintiffs' circumstances or personally and knowingly violated plaintiffs' constitutional rights or that the unconstitutional conditions at MCI–Cedar Junction were so pervasive as to provide "constructive notice" to Harshbarger or Weld of the alleged deprivations of plaintiffs' rights.

Furthermore, even if the complaint sufficiently alleged that Harshbarger or Weld had "constructive notice" of the conditions at MCI–Cedar Junction, the complaint contains no allegation even of a conclusion, much less a factual basis for the conclusion, that Harshbarger or Weld has supervisory responsibility for the MCI–Cedar Junction facility. Under Massachusetts law, either the Commissioner of Correction, or the superintendent of MCI–Cedar Junction, or both, have supervisory responsibility for the operation of the MCI–Cedar Junction state correctional facility and are charged with promulgating minimum standards for the care and custody of persons committed to those facilities. Mass.Gen.L. ch. 124 § 1(a); Mass.Gen.L. ch. 127 § 1A. The custodial responsibility for plaintiffs, then, was being discharged by MCI–Cedar Junction correctional officials. The Governor's and the Attorney General's obligations to enforce or execute state laws do not make them responsible for the specific acts of correctional officials.

Moreover, any claim that a defendant official is individually liable for failure to take affirmative action to cause other officials to act or cease acting with respect to some matter must be supported by a showing of a duty to act. A court must be sensitive to the distinction between the State's duty and the duty of an individual as an official of the State. It is true that, in the circumstances of this case, plaintiffs have alleged enough to support a State duty:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and well-being.

*DeShaney v. Winnebago Cty. Dept. of Soc. Servs.*, 489 U.S. 189, 199–200, 109 S.Ct. 998, 1005, 103 L.Ed.2d 249 (1989). The State's duty arises from the *"State's* affirmative act of restraining the individual's freedom to act on his own behalf." *Id.* at 200, 109 S.Ct. at 1005. The point remains, however, that plaintiffs have not stated enough to support a claim for individual liability of a State official by merely alleging facts to support a determination that the *State* had a duty to act affirmatively to protect the liberty interests of the plaintiffs. The State's duty may be discharged by acts of other officials. To support a claim against a particular individual, plaintiffs must allege facts sufficient to show that the particular individual against whom they assert a claim for damages had a duty to act affirmatively. This they must do before they have met their burden of showing a nonfrivolous claim against that individual. Moreover, in order to show such a duty on the part of a particular individual, the plaintiffs must show that that individual official had the sort of "special relationship" with plaintiffs that would support a determination that the individual had a duty to take affirmative steps to ensure that plaintiffs' rights are protected. *Germany v. Vance*, 868 F.2d 9, 15 (1st Cir.1989). Even if a "special relationship" could be established that might give rise to affirmative duties to act under the common law of tort, *see* Restatement (Second) of Torts § 323 (1965) (one who undertakes to render services to another may in some circumstances be held liable for doing so in a negligent fashion), "the Due Process Clause of the Fourteenth Amendment ... does not transform every tort committed by a state actor into a constitutional violation." *DeShaney*, 489 U.S. at 202, 109 S.Ct. at 1006. *See also, Daniels v. Williams*, 474 U.S. 327, 335, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986) ("not all common-law duties owed by government actors were ... constitutionalized by the Fourteenth Amendment").

■■■■■■ Thus, even if plaintiffs were able to show "constructive notice" of conditions alleged to be violative of federal constitutional rights, that would not be enough to support a claim absent a showing of a duty to act and proof of violation of the standard of duty. This is true regardless of whether the duty is one of reasonable care (which is not the case under *DeShaney* and other precedents), or instead a duty that is violated only by proof of conduct violating some more demanding standard such as a requirement of malicious and sadistic intent to cause harm. *See, Foster v. McGrail*, 844 F.Supp. 16 (D.Mass.1994) (appeal pending).

> When dealing with a claim that [the Fourteenth Amendment] creates a right in prisoners to sue a government official because he negligently created an unsafe condition in the prison, we bear in mind [that] ... [o]ur Constitution ... does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries.... We have previously rejected reasoning that 'would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.' ... We do not believe its protections are triggered by lack of due care by prison officials.

*Daniels*, 474 U.S. at 332–33, 106 S.Ct. at 665–66; *DeShaney*, 489 U.S. at 211, 109 S.Ct. at 1011 (the Due Process Clause is not violated by merely negligent conduct). Thus, to support a claim under the Fourteenth Amendment of a violation of the standard of duty, plaintiffs must show at least that Harshbarger or Weld's conduct was more than merely negligent.

■■■■ In addition, Harshbarger and Weld, as state officials, would be entitled to qualified immunity from personal liability for any actions taken in "good faith."

> Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Broderick v. Roache*, 996 F.2d 1294, 1298 (1st Cir.1993) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982)). *See also Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (to support liabil-

ity, the unlawfulness of the conduct must have been apparent).

██ The plaintiffs fail to provide any facts indicating that either Harshbarger or Weld was involved in any disciplinary actions taken against plaintiffs, or that their inaction in relation to the alleged disciplinary deprivation of a full five hours per week of required exercise time violated clearly established statutory or constitutional rights. Violations of state or local laws do not, *per se,* raise viable claims under § 1983. *Limerick v. Greenwald,* 749 F.2d 97, 100 (1st Cir.1984).

### 2. *Claims Based on the Massachusetts Constitution*

██ In their complaint, plaintiffs do not allege any facts to support their claims against Weld and Harshbarger of violations of Articles I, XII and XIV of the Declaration of Rights under Part I of the Massachusetts Constitution. In addition, even if plaintiffs alleged sufficient facts to support claims of state constitutional violations, Harshbarger and Weld could assert qualified immunity from these claims. *Duarte v. Healy,* 405 Mass. 43, 537 N.E.2d 1230 (1989); *see also, Santiago v. Fenton,* 891 F.2d 373, 386 n. 10 (1st Cir.1989) (noting that rules of qualified immunity apply to the Massachusetts Civil Rights Act). Thus,

> public officials are not liable under the Civil Rights Act for their discretionary acts, unless they have violated a right under Federal or State constitutional or statutory law that was "clearly established" at the time.

*Duarte,* 405 Mass. at 47, 537 N.E.2d at 1232. *See also Foster v. McGrail.*

### 3. *Applying Particularity-of-Claim Requirements*

██ Were I applying the particularity-of-complaint requirements of pre-*Leatherman* decisions in the First Circuit, I would conclude that all claims in this case against defendants Weld and Harshbarger should be dismissed forthwith. Even under those precedents, however, it would be appropriate to give notice to plaintiffs and an opportunity, before an order of dismissal is entered, to seek leave to file an amended complaint meeting particularity requirements.

██ As explained in Part III.D above, I conclude that even if these precedents do not survive· *Leatherman,* it is appropriate to make at this time an Interlocutory Order that these claims will be dismissed unless plaintiffs, within a reasonable time specified, file a written submission (which may be in the form of a motion for leave to file an amended complaint, the signed proposed amended complaint being submitted along with the motion for leave to file) stating with particularity at least an outline or summary of the facts and the legal grounds of each claim alleged against these defendants.

The court will so order in this case.

### V. *Issues Regarding Joinder of Claims and Parties*

██ A close reading of the complaint in this case (see Part I above) discloses that the two plaintiffs seek to sue together (that is, to join as plaintiffs) in asserting their respective claims arising out of an inmate fight of July 4, 1992. This joinder of plaintiffs is unobjectionable under Rule 20(a) of the Federal Rules of Civil Procedure.

In addition, if plaintiffs can show that they have identified particular defendants against whom they assert nonfrivolous claims growing out of the disciplinary proceedings following the incident of July 4, 1992, joinder of these defendants may be determined to be permissible. Fed.R.Civ.P. 20(a).

Even if the joinder of the claims of the two plaintiffs against those defendants so identified is permissible, however, the complaint in this case either (1) makes a host of allegations in paragraphs 29–40 (summarized in Part I.B above) that are irrelevant to any claim alleged or (2) attempts to allege numerous additional claims against many additional defendants that a court concerned with just, speedy and inexpensive adjudication should determine, either as a matter of law or in the exercise of discretion to be beyond the range of permissible joinder of parties under Fed.R.Civ.P. 18, or as beyond the range of permissible joinder of parties under Fed.R.Civ.P. 20(a), or impermissible on both grounds.

 Concerns about management of· a case in which plaintiffs are allowed to join claims arising from separate incidents each involving different parties and predominantly unrelated issues weigh heavily against exercising discretion, when any exists under the Federal Rules, to bring into one civil action such a complex array of claims and parties. This is an added reason for early case screening in which the court, in the exercise of case management authority, imposes some form of reasonably stringent particularity-of-claim requirement.

## VI. *Procedural Irregularities in Claims Against Other Defendants*

 It appears that plaintiffs intend to seek relief against persons who are unnamed in the complaint. Plaintiffs list, in the caption of the complaint and the body of the complaint, "Nancy A. White, *et., al.,* counsels" and "Phillip Harrington, DDU Director, *et. al.,*" (emphasis added). Plaintiffs cannot proceed in this manner. Instead, plaintiffs must specifically identify each defendant against whom relief is sought, and must give each defendant notice of the action by serving upon him or her a summons and a copy of the complaint. In keeping with this requirement, the Clerk and the parties are directed to delete from the caption of this case the phrase "et, al." following the names of both Nancy A. White and Phillip Harrington. The plaintiffs must not use "et al." in this manner in any future submissions to this court.

## VII. *Time Allowance*

 The Order below allows plaintiffs a period not less than 90 days to file a response or responses clarifying their claims. Ordinarily orders of this court fix a shorter time for response because the Local Rules of the court and case management orders in particular cases aim for prompt disposition of all cases on the merits. The court allows a longer period of time for response in this instance because the plaintiffs are proceeding *pro se.*

## VIII. *Other Pending Motions*

A separate Memorandum and Order will be issued with respect to other pending motions.

### Interlocutory Order

For the foregoing reasons, it is ORDERED:

(1) Plaintiff Ricardo Feliciano's Motion for Appointment of Counsel (Docket No. 6, filed Aug. 23, 1993) is denied.

(2) Motion of Defendants Attorney General Scott Harshbarger and Governor William Weld to dismiss (Docket No. 36, filed November 2, 1993) is allowed, subject to the condition stated in (3) below.

(3) This is a Particularity-of-Claim Order. (See Part III.E above). The order stated in (2) is without prejudice to the plaintiffs' filing on or before May 16, 1994, a written submission to the court (which may be in the form of a motion for leave to file an amended complaint, the signed proposed amended complaint being submitted along with the motion for leave to file) stating with particularity at least an outline or summary of the facts and the legal grounds of each claim alleged against these defendants.

(4) If the plaintiffs fail to file within the time allowed a written submission meeting the particularity-of-claim requirement stated in (3) as to claims against defendants Harshbarger and Weld, this action will be subject to dismissal forthwith as to defendants Harshbarger and Weld by an interlocutory order or, if determined to be appropriate upon motion of the defendants, by a Separate Final Judgment under Rule 54(b) of the Federal Rules of Civil Procedure.

(5) The court hereby makes a Particularity-of-Claim Order as to claims against other defendants in this case. Plaintiffs must file, either in the same document they file under paragraph (3) above or in a separate written submission, a clarification of their claims against each of the other defendants in this case, stating with particularity at least an outline or summary of the facts and the legal

grounds of each claim alleged against each defendant.