Nathan TYLER, Daniel O'Neil and Carlos Marquez, Plaintiffs,

v.

SUFFOLK COUNTY, Andrea J. Cabral and Gerard Horgan, Defendants.

Civil Action No. 06–11354–NMG.

United States District Court, D. Massachusetts.

March 5, 2009.

See also, 253 F.R.D. 8.

Howard Friedman, Law Offices of Howard Friedman, P.C., Boston, MA, for Plaintiffs.

Ellen Caulo, Kathleen M. Cawley, Allen H. Forbes, Boston, MA, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

In this civil rights class action challenging the prison conditions at the Suffolk County House of Correction ("SCHC"), the plaintiffs and defendants have each filed a motion to compel discovery. The Court addresses those motions as set forth below.

### I. *Background*

### A. Factual Background

This suit arose on August 3, 2006, when the class plaintiffs, who are current or former inmates at the SCHC, filed a complaint against 1) Suffolk County, 2) Andrea J. Cabral ("Cabral"), Sheriff of Suffolk County, in her official and individual capacities and 3) Gerard Horgan ("Horgan"), Superintendent of the SCHC, in his official and individual capacities (collectively "the defendants"). The plaintiffs alleged violations of the Eighth and

Fourteenth Amendments of the United States Constitution and Article 26 of the Massachusetts Declaration of Rights.

The plaintiffs contend that they were housed in Building 4 at the SCHC from August 3, 2003, until late 2007 or early 2008, during which time none of Building 4's cells contained working flush toilets or sinks with running water. The plaintiffs were locked in their cells overnight and for several hours at a time during the day. During "lock-in" periods, they had to use buzzers to alert a guard that they wished to be released to use the bathroom. The plaintiffs allege that the buzzers were often out of order or shut off and that, when they did work, guards typically took about 30 minutes to respond and occasionally did not respond at all. Such conditions allegedly forced the plaintiffs to urinate and defecate in makeshift bags and containers and to endure the ensuing offensive stenches, thus causing them to suffer physical pain as well as emotional injury from humiliation.

### B. Procedural History

This Court dismissed all counts against Suffolk County on May 24, 2007, allowing the plaintiffs to proceed against the remaining two defendants. On June 18, 2008, the Court allowed the certification of a class of "all inmates who are, have been, or will be housed in Building 4 of [SCHC] at any time since August 3, 2003".

The parties are currently engaged in discovery disputes. On June 20, 2008, the class plaintiffs filed a motion to compel the defendants to respond adequately to certain interrogatories and document requests. On September 2, 2008, the defendants filed a motion to compel the plaintiffs to provide the names of the respondents and witnesses which had been redacted from previously produced questionnaires (described below). Those motions are currently pending before the Court.

### C. Motion to Compel Answers to Interrogatories and Document Requests

During discovery, the defendants objected to some interrogatories and document re-

quests on the grounds that the questions were overly broad and unduly burdensome because they covered a time period dating back to 1991. They allege that the actionable time period began on August 3, 2003, as evident from the complaint and class certification. Therefore, they assert that discovery of information pre-dating that time is irrelevant. In addition, the defendants responded to other interrogatories by stating that they lack personal knowledge of the matters upon which discovery was sought.

In their motion to compel, the plaintiffs contend that they require valid responses to the disputed discovery requests in order to address the defendants' defenses suggesting that they 1) "inherited" the situation, 2) have made bathroom access a priority and have made numerous policy changes to that end and 3) are limited by safety concerns.

In their opposition, the defendants assert that supplementing their answers to the disputed interrogatories would require speculation as to the reasons that previously elected officials made certain policy decisions. They suggest that Sheriffs Rouse and Rufo, who were in charge of the SCHC prior to the defendants, are in much a better position to testify about the reasons they promulgated certain policies.[1] Furthermore, the defendants state that interrogatories which framed the inquiry using the word "you" required answers based only on personal knowledge.

### D. Motion to Compel Production of Completed Questionnaires

About three months before bringing this lawsuit, plaintiffs' counsel mailed a questionnaire to then-current and former inmates of Building 4 seeking information regarding: 1) their contact information, 2) dates and locations of incarceration, 3) a description of difficulties with toilet access, 4) any grievances the inmates had filed and 5) contact information for any former Building 4 inmates. When the defendants requested copies of the completed questionnaires during discovery, the plaintiffs produced them but redacted the names and contact information

---

**1.** The first names of Sheriffs Rouse and Rufo have not been provided to the Court.

of the responding inmate and any witnesses identified by him or her.

In their motion to compel, the defendants contend that they are entitled to *all* information contained in the questionnaires. They argue that neither the attorney-client privilege nor the work product doctrine protects the redacted information because the questionnaires were not answered in the context of an attorney-client relationship and the work-product doctrine does not extend to the underlying facts contained within materials used in anticipation of litigation.

In their opposition, the plaintiffs contend that the identities of the inmates named in the questionnaires must remain confidential to protect against retaliation by prison officials. Moreover, they suggest that the questionnaires are privileged and that the defendants have not identified why they need the redacted information.

## II. *Legal Analysis*

### A. Plaintiffs' Motion to Compel Answers to Interrogatories and Document Requests

#### 1. Legal Standard

 Federal district courts have broad discretionary power to manage pretrial discovery in the cases before them. *Poulin v. Greer*, 18 F.3d 979, 986 (1st Cir.1994). Under Fed.R.Civ.P. 34(a)(1), reasonably obtainable information within the responding party's possession, custody or control is discoverable. *Rosie D. v. Romney*, 256 F.Supp.2d 115, 119 (D.Mass.2003). Control is defined as having "the legal right or ability to obtain the information from another source upon demand", *United States v. Textron, Inc. & Subsidiaries*, 2009 WL 136752, at *15 (1st Cir. Jan. 21, 2009) (citation omitted), or may be established by the existence of a principal-agent relationship, *Rosie D.*, 256 F.Supp.2d at 119. Discovery may be limited temporally, however, to avoid unduly burdensome requests. *Briddell v. Saint Gobain Abrasives, Inc.*, 233 F.R.D. 57, 60 (D.Mass.2005); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978).

 A lawsuit against an officer in his or her official capacity is another way of suing the public entity represented by that official. *Feliciano v. DuBois*, 846 F.Supp. 1033, 1043 (D.Mass.1994). Accordingly, when an official is sued in his or her official capacity, any non-privileged, relevant information within the control of the related public entity is also discoverable against that official. *See, e.g., Green v. Fulton*, 157 F.R.D. 136, 142 (D.Me. 1994) (personnel records of officers employed prior to the tenure of a chief of police were discoverable when the chief of police was sued in his official capacity).

#### 2. Application

 First, the defendants contend that the time period relevant to this lawsuit begins on August 3, 2003. The Court agrees. The defendants' liability turns on the conditions to which the plaintiffs were subjected (and the defendants' knowledge of those conditions) from that date forward. The defendants are not, as the plaintiffs suggest, using information prior to August 3, 2003, as a shield. Their defenses concern the conditions of SCHC's Building 4 as of that date and the changes that were made since then. Therefore, the Court will not require the defendants to produce information prior to August 3, 2003. Rather, with respect to the interrogatories, the defendants will be required to supplement their responses, if necessary, with any information after that date that is relevant to the lawsuit. With respect to the document requests, all of the plaintiffs' arguments concern accessing information prior to August 3, 2003, so the defendants will not be required to supplement their production of documents.

 Next, the defendants contend that they need only respond based upon their personal knowledge in answering the plaintiffs' interrogatories. The Court agrees insofar as the interrogatories are directed to "you" (in reference to the defendants). With respect to those interrogatories, the plaintiffs can gather additional information from deposition testimony if necessary. In response to other interrogatories posed more generally, however, the defendants may not rely purely

on their personal knowledge. For example, Interrogatories Nos. 14 and 15 ask simply whether inmates in Building 4 urinate or defecate in their cells during periods when the cells are locked. Because the defendants have been sued in their official capacities, they will be required to respond to those questions using all reasonably obtainable information within their possession, custody or control, including records maintained by SCHC.

### B. Defendants' Motion to Compel Production of Completed Questionnaires

#### 1. Legal Standard

 As codified at Fed.R.Civ.P. 26(b)(3), the work product doctrine protects documents prepared in anticipation of litigation by or for a party or its representative. A related doctrine, the attorney-client privilege, protects communications made between clients and attorneys for the purpose of obtaining legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Neither the work product doctrine nor the attorney-client privilege protects the underlying facts contained in the documents or communications. *In re Grand Jury Subpoena*, 220 F.R.D. 130, 140 (D.Mass.2004). The burden of invoking either protection rests on the party resisting discovery. *Id.* at 141.

#### 2. Application

 The names and contact information of the inmates and witnesses identified in the questionnaires constitutes factual information which does not receive the protection of either the work product doctrine or the attorney-client privilege. The plaintiffs' argument that questionnaires for prospective class members are generally protected is unavailing particularly here, where 1) only the identities of those identified in questionnaires, not the questionnaires as a whole, are at issue and 2) the substance of the completed questionnaires has already been produced to the defendants. Therefore, the plaintiffs will be required to produce the redacted information to the defendants.

The class plaintiffs' fear of retaliation is valid, however, in light of the fact that numerous inmates claim to have suffered retaliation or threats after airing their grievances with respect to bathroom access in the past. The defendants' argument that it is "likely" that most respondents have been released from custody by now is not persuasive. Even if only one respondent remains in SCHC custody, he or she should not be exposed to possible retaliation as a result of filling out the questionnaire. Moreover, apparently many inmates released from SCHC later return to custody there, thus making retaliation a possibility in the future.

To circumvent the potential of retaliation, the class plaintiffs suggest that the Court either 1) provide a separate list of the respondents' names or 2) enter a protective order that the redacted information be disclosed on an "attorney's eyes only" basis. The defendants state in their motion that they would agree to treating the redacted information as "confidential" within the meaning of the Court's February 29, 2008, protective order which would allow the information to be seen by the attorneys, the Court, the parties, deposition witnesses and expert witnesses. It appears that the plaintiffs only fear retaliation from SCHC personnel, so only SCHC personnel need to be prohibited from viewing the redacted information. Thus, the plaintiffs' suggestion of treating the redacted information from the questionnaires as for "attorney's eyes only" is too restrictive and the defendants' suggestion of treating it as "confidential" is too permissive. Accordingly, the Court will require the plaintiffs to disclose the redacted information subject to 1) the restrictions of the February 29, 2008, protective order as well as 2) an additional restriction that it may not be disclosed to any SCHC personnel, including the defendants.

### ORDER

In accordance with the foregoing:

1) the plaintiffs' motion to compel (Docket No. 44) is, to the extent that it requests the defendants a) to supplement their responses to Interrogatories Nos. 14 and 15 and b) to provide discoverable

information not previously produced for the period subsequent to August 3, 2003, **ALLOWED** but is otherwise **DENIED;** and

2) the defendants' motion to compel (Docket No. 56) is, subject to the Court's February 29, 2008, protective order and with the additional restriction that the information produced shall not be disclosed to any SCHC personnel, **ALLOWED.**

So ordered.