FREDERICK DUARTE vs. ROBERT W. HEALY & another.[1]

Middlesex. January 4, 1989. — May 10, 1989.

Present: WILKINS, LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

Civil Rights, Immunity of public official. Privacy. Public Officer. Gov-
ernmental Immunity. Controlled Substances. Public Employment, Urine
test.

This court concluded that the Legislature, in enacting the State Civil Rights
Act, G. L. c. 12, §§ 11H & 11I, intended to adopt the standard of
qualified immunity for public officers with respect to their discretionary
functions as developed by the United States Supreme Court under the
Federal Civil Rights Act, 42 U.S.C. § 1983 (1982). [46-47]
The acts of two municipal officers in formulating a drug testing policy for
probationary fire fighter recruits were discretionary in nature, and, at
the time a certain recruit was subjected to testing in 1985, decisional
law did not clearly establish that such a policy violated the recruit's
constitutional rights, with the result that the officers were immune from
suit on the recruit's claims alleging violations of his civil rights. [47-49]
Two municipal officers were entitled to common law immunity from suit
in an action against them alleging violation of a probationary fire fighter
recruit's rights under the Privacy Act, G. L. c. 214, § 1B, arising from
the recruit's being subjected to drug-testing urinalysis, where the officers'
respective acts in formulating a drug testing policy for recruits and in
implementing that policy were discretionary and performed in good
faith. [49-51]

CIVIL ACTION commenced in the Superior Court Department
on July 25, 1985.

The case was heard by Joseph S. Mitchell, Jr., J., on motions
for summary judgment.

[1] Thomas V. Scott. The amended complaint names Robert W. Healy in
his official capacity, "as he is City Manager of the City of Cambridge,"
whereas it appears to name Thomas V. Scott in his individual capacity,
although the plaintiff bases his complaint on the actions of Thomas V. Scott
in his capacity as the chief of the Cambridge fire department. This apparent
distinction plays no part in our disposition of this case. No claim against
the city of Cambridge is asserted under G. L. c. 258 (Massachusetts Tort
Claims Act).

The Supreme Judicial Court granted a request for direct appellate review.

*Edward D. Kalman* (*Andra R. Hotchkiss* with him) for the defendants.

*Willie J. Davis* for the plaintiff.

LIACOS, J. The issue in this case is whether the defendants, public officials of the city of Cambridge, are entitled to qualified immunity from suit on claims against them under G. L. c. 12, §§ 11H & 11I, and G. L. c. 214, § 1B. The case arises out of a policy, adopted by the city, of subjecting fire fighter probationary recruits to urinalysis at random times during their training. On cross motions for summary judgment a judge in the Superior Court ruled that the defendant Robert W. Healy, city manager of Cambridge, is immune from a suit for damages, but that the defendant Thomas V. Scott, chief of the Cambridge fire department, has no such immunity. Both Duarte and Scott have appealed.[2] We decide that both defendants are immune.

We summarize the judge's findings. On April 26, 1985, the plaintiff, Frederick Duarte, graduated from the basic fire fighter training program of Cambridge. On April 29, 1985, Duarte and the other members of his class reported for duty to engine company no. 3 on Cambridge Street in East Cambridge. When they arrived, they were informed that they would be required to provide urine samples immediately. The class of thirty fire fighters was split in groups of six. Each group was taken to a lavatory which had two toilet stalls with doors, two shower stalls with curtains, and two urinals without doors. Each fire fighter was given a sealed plastic container and was instructed to provide a urine sample. None of the fire fighters was permitted to leave the view of the officials who monitored the test.

The fire fighters were directed to sign statements listing any medication they were taking. Duarte listed only "Vitamins and Medication." Laboratory testing indicated, however, that

[2] The case is properly before us because of the importance of determining immunity issues early if immunity is to serve one of its primary purposes: to protect public officials from harassing litigation. See *Breault* v. *Chairman of the Bd. of Fire Comm'rs of Springfield,* 401 Mass. 26, 30-31 (1987), cert. denied sub nom. *Forastiere* v. *Breault,* 485 U.S. 906 (1988).

Duarte's urine sample contained traces or by-products of cocaine. The testing also revealed other traces or by-products of cocaine in samples of two other fire fighters, and traces or by-products of marihuana in samples from six fire fighters. The three fire fighters with cocaine traces were terminated, and the other six fire fighters were suspended, with probationary conditions.

Duarte was informed on May 9, 1985, that his employment would be terminated because his urine sample had been tested and found to be positive for cocaine. A second test was conducted on the same sample, which confirmed the first test. The judge found that the procedures used to collect and to test the sample were procedures upon which a reasonable person could rely for accurate results.

The judge also found that the defendant Healy approved the policy of urine testing, and that Healy had decided that termination of employment was the appropriate disciplinary action to be taken against those firemen found to have traces or by-products of cocaine in their system. Finally, the judge found that the defendant Scott implemented these policies.

Duarte's original complaint was based on various Federal and State grounds, for declaratory and injunctive relief and money damages against the defendants. A judge of the Superior Court in Middlesex County denied all of the claims except those under the Fourth and Fourteenth Amendments to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. The judge granted declaratory relief under those provisions, decided that injunctive relief was not appropriate, and permitted Duarte to amend his complaint to elaborate on his grounds for seeking damages.

Duarte then filed an amended complaint seeking damages on two counts. He renewed his constitutional claims under the Massachusetts Civil Rights Act, G. L. c. 12, §§ 11H & 11I (1986 ed.), and he asserted a claim under the Massachusetts Privacy Act, G. L. c. 214, § 1B (1986 ed.). Duarte made no claim under 42 U.S.C § 1983 (1982). All parties moved again for summary judgment. Another judge granted summary judgment in favor of the defendant Healy on the ground of immunity,

but held that the defendant Scott had no such immunity and granted summary judgment against him on both claims, setting the case against Scott for hearing on damages.

1. *Immunity.* We assume, for purposes of this discussion, that the judge was correct in concluding that the urinalysis tests conducted in this case violated Duarte's rights under both the Privacy Act and the Civil Rights Act. We proceed directly to the question whether the defendants are nevertheless immune from suit, not just from liability. See *Breault* v. *Chairman of the Bd. of Fire Comm'rs of Springfield*, 401 Mass. 26, 31 (1987), cert. denied sub nom. *Forastiere* v. *Breault*, 485 U.S. 906 (1988).

In *Breault, supra,* we discussed the two forms of immunity that might apply to public employees under the Civil Rights Act. The first was common law immunity, as variously expressed in our cases, and the second was a qualified immunity patterned after Federal qualified immunity under 42 U.S.C. § 1983. *Id.* at 35, 38. We noted that "the Massachusetts Civil Rights Act by its terms admits of no immunities." *Id.* at 35, quoting *Chicopee Lions Club* v. *District Attorney for the Hampden Dist.*, 396 Mass. 244, 252 (1985). We also noted that there was no " 'tradition' of immunity for nonjuridical officers so firmly 'rooted in history' that we should not presume the Legislature to have abandoned it without comment." *Breault, supra* at 37, quoting *Chicopee Lions Club, supra.* However, we had no occasion to decide whether the Legislature intended to adopt the Federal system of immunity for discretionary functions under § 1983 because we decided that the actions of the defendants in *Breault* were ministerial. The case before us presents an occasion to address the issue of qualified immunity under our State Civil Rights Act. We conclude it to be consistent with the intent of the Legislature in enacting the Civil Rights Act to adopt thereunder the standard of immunity for public officials developed under § 1983.

In *Batchelder* v. *Allied Stores Corp.*, 393 Mass. 819, 822-823 (1985), we concluded that "the Legislature intended to provide a remedy under G. L. c. 12, § 11I, coextensive with 42 U.S.C. § 1983 . . . except that the Federal statute requires

State action whereas its State counterpart does not." By the time the Legislature enacted the Civil Rights Act, St. 1979, c. 801, the Supreme Court already had interpreted § 1983 to provide qualified immunity for discretionary functions. *Wood* v. *Strickland*, 420 U.S. 308 (1975). We presume that the Legislature was aware of this case law when it chose to pattern the Massachusetts Civil Rights Act after § 1983. *Packaging Indus. Group* v. *Cheney*, 380 Mass. 609, 611 (1980). Furthermore, the Supreme Court already had established the basic two-part test for determining to what discretionary functions the doctrine of qualified immunity applies. That test involved an objective element, a presumptive knowledge of, and respect for, basic, unquestioned constitutional rights, and a subjective element, whether the official actually knew that the law forbade the conduct. *Wood* v. *Strickland, supra* at 321-322. Subsequent Supreme Court cases have elaborated on this standard, but none has changed its basic test. See, e.g., *Anderson* v. *Creighton*, 483 U.S. 635 (1987); *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982). We have had no occasion to consider whether it is appropriate under the Civil Rights Act to adopt all of the current Supreme Court precedent under § 1983. However, for purposes of this case we can say that public officials are not liable under the Civil Rights Act for their discretionary acts, unless they have violated a right under Federal or State constitutional or statutory law that was "clearly established" at the time. See *Anderson, supra* at 3038-3039. Thus, with regard to the plaintiff's claim under the State Civil Rights Act, we must consider whether the relevant law was clearly established when Duarte was subjected to urinalysis in April, 1985.

2. *Immunity under G. L. c. 12, §§ 11H & 11I.* "Under *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982), the doctrine of qualified immunity applies only to 'discretionary functions.' " *Dobos* v. *Driscoll*, 404 Mass. 634, 646 (1989). In light of our prior decisions (see preceding discussion), we apply the same principle to alleged violations of the State Civil Rights Act. Thus, we must decide whether the acts of these defendants were discretionary and, if so, whether they retain the protection offered them by the doctrine of qualified immun-

ity. "Even defendants who violate constitutional rights enjoy a qualified immunity that protects them . . . unless it is further demonstrated that their conduct was unreasonable under the applicable standard." *Davis* v. *Scherer*, 468 U.S. 183, 190 (1984).

We conclude that the acts of the defendants herein were discretionary under our State Civil Rights Act. The United States Supreme Court has stated that, under § 1983, "[a] law that fails to specify the precise action that the official must take in each instance creates only discretionary authority." *Id.* at 196-197 n.14. We hold that the same is true under our Civil Rights Act.[3] At the time the defendants formulated their drug testing policy, no Federal or State constitutional, statutory, or regulatory provision specified or precluded the precise actions that the defendants Healy and Scott took. Furthermore, the drug testing policy by urinalysis was one in which both defendants had a substantial measure of discretion in development and implementation. See *Thorne* v. *El Segundo*, 802 F.2d 1131, 1138 n.7 (9th Cir. 1986) (plaintiff who took position that city manager was only person with discretionary authority over hiring misconceived notion of ministerial duty).

As we noted above, the defendants are not liable for their discretionary acts unless their actions violated Duarte's rights that were "clearly established" under the relevant law. In this case, Duarte must show that it was clearly established that a drug testing policy, such as the one here at issue, violated the constitutional rights of the persons being tested. We can discern no such clearly established law.

As to Duarte's claim under art. 14 of the Massachusetts Declaration of Rights, we have decided only recently with any specificity what standards apply to urinalysis. *Bally* v. *Northeastern Univ.*, 403 Mass. 713 (1989). *Horsemen's Benevolent & Protective Ass'n* v. *State Racing Comm'n*, 403 Mass. 692

---

[3] We consider in part 3, *infra*, the separate question whether the defendants' acts were discretionary under our common law. Cf. *Dobos* v. *Driscoll*, *supra* at 646 & n.6 (noting the difference between discretionary functions under the Massachusetts Tort Claims Act and under § 1983).

(1989).[4] Certainly, in April, 1985, the law of this State was not clearly established that the urinalysis policy adopted and implemented by the defendants herein violated art. 14.

As to Duarte's claim under the Fourth and Fourteenth Amendments to the Federal Constitution, the law also was not clearly established that a urinalysis policy such as that here at issue would violate Duarte's rights. Prior to April 1985, there was relatively little case law on the subject, and some of the cases upheld such drug testing. See, e.g., *Division 241 Amalgamated Transit Union (AFL-CIO)* v. *Suscy*, 538 F.2d 1264, 1267 (7th Cir.), cert. denied, 429 U.S. 1029 (1976); *Allen* v. *Marietta*, 601 F. Supp. 482, 488-492 (N.D. Ga. 1985). Furthermore, from shortly after that time until the present, courts have continued to disagree, and some courts have upheld urinalysis in circumstances similar to those here at issue. Compare those cases holding similar testing unconstitutional, cited in *Horsemen's, supra* at 699, with *Turner* v. *Fraternal Order of Police*, 500 A.2d 1005, 1009-1011 (D.C. 1985) (Nebeker, J., concurring) (stating that urine collection is similar to voice and handwriting exemplars which are not within an individual's expectation of privacy), and *Jones* v. *McKenzie*, 833 F.2d 335 (D.C. Cir. 1987) (drug testing of school bus attendants without individualized suspicion is constitutional). Last, the decisions of the United States Supreme Court which give guidance were not decided until 1989. See *Skinner* v. *Railway Labor Executives' Ass'n*,     U.S.      (1989) (109 S. Ct. 1402 [1989]); *National Treasury Employees Union v. Von Raab*,     U.S.
(1989) (109 S. Ct. 1384 [1989]).

3. *Discretionary functions at common law.* We next consider whether the defendants are immune, at common law, for their

---

[4] Our recent decision in *Horsemen's Benevolent & Protective Ass'n, supra*, held that random drug testing by urinalysis of race track personnel is not permissible under art. 14. The case does not determine whether urine testing of such emergency personnel as fire fighters would be permissible within the discretion of public officials. See also the recent United States Supreme Court opinions on the subject, e.g., *Skinner* v. *Railway Labor Executives' Ass'n*,     U.S.      (1989) (109 S. Ct. 1402 [1989]); *National Treasury Employees Union* v. *Von Raab*,     U.S.      (1989) (109 S. Ct. 1384 [1989]).

violation of Duarte's rights under the Privacy Act. The judge below decided that the defendant Healy's actions were discretionary under *Gildea* v. *Ellershaw*, 363 Mass. 800, 820 (1973). We agree.

The judge found that it was Healy who decided to adopt the policies of urinalysis and of termination for fire fighters who tested positive for cocaine, based on information about urinalysis and consideration of the effects of cocaine. These policy determinations in 1985 were acts of discretion. See *Irwin* v. *Ware*, 392 Mass. 745 (1984). The judge found that Healy and Scott acted in good faith. Healy is immune from any claim arising from a violation of Duarte's rights under the Privacy Act.[5]

We disagree with the judge below, however, that the defendant Scott is not immune. The judge stated that Scott is not protected by the immunity afforded discretionary functions because he merely was carrying out a policy that already had been established by the defendant Healy. As we noted in *Patrazza* v. *Commonwealth*, 398 Mass. 464, 468-469 (1986):

> " '[T]he "discretionary function or duty" . . . includes more than the initiation of programs and activities. It also includes determinations made by executives or adminis-

---

[5] We held in *Gildea* v. *Ellershaw, supra* at 820, as follows:

"Upon full consideration of all of the judicial precedents cited above, and of others too numerous to cite, we hold that the law of the Commonwealth should be, and therefore is, that if a public officer, other than a judicial officer, is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority and jurisdiction, he is not liable for negligence or other error in the making of that decision, at the suit of a private individual claiming to have been damaged thereby. This rule is presently limited to public officers acting in good faith, without malice and without corruption." (Footnotes omitted.)

We note also that whether the drug test here involved would be considered an unreasonable invasion of privacy in violation of G. L. c. 214, § 1B, is dubious, in light of our recent decision in *Bally* v. *Northeastern Univ., supra* at 720-721.

trators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. *It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable.' United States* v. *Varig Airlines*, [467 U.S. 797, 811 (1984)], quoting *Dalehite* v. *United States*, [346 U.S. 15, 35-36 (1953)]." (Emphasis added.)

More importantly, it appears that Scott, as fire chief, with Healy, helped to formulate the policy. Such action would be within the chief's responsibility. See G. L. c. 31, §§ 34, 61 (1986 ed.). See also *Nolan* v. *Police Comm'r of Boston*, 383 Mass. 625, 630 (1981) (police commissioner has duty to oversee performance of police officers). Thus, the defendant Scott is immune for his development and implementation of the urinalysis policy, in so far as Duarte's claim rests on a violation of the Privacy Act.

4. *Conclusion.* For the above reasons both defendants are immune from liability arising out of their adoption and implementation of the urinalysis policy. Duarte's claims against the defendants under the Civil Rights Act and the Privacy Act are to be dismissed.

*So ordered.*