Gants, J.
The plaintiff, Pat Doe (“Doe”),[1] is a fifteen-year-old student now in the eighth grade at Brockton South Junior High School (“the School”) who has been diagnosed with gender identity disorder. Doe is biologically male but, as a result of the gender identity-disorder, has a female gender identity and prefers to be referred to as a female.[2] Phrased simply in non-medical terminology, Doe has the soul of a female in the body of a male.
Doe has filed an eight-count complaint against the defendants, seeking injunctive relief allowing her to wear clothing in School that is customarily worn by female teenagers, and damages for the School’s earlier refusal to permit her to attend wearing such clothing. On October 11, 2000, Judge Linda Giles of this Court granted Doe a preliminary injunction barring the defendants from preventing Doe “from wearing any clothing or accessories that any other male or female student could wear to school without being disciplined.” Memorandum of Decision and Order on Plaintiffs Motion for Preliminary injunction, October 11, 2000, at 16. The defendants now seek to narrow the scope of the complaint by moving to dismiss certain defendants and certain counts. The plaintiff has moved to amend the complaint to add the City of Brockton as a defendant.
DEFENDANTS PARTIAL MOTION TO DISMISS
The defendants have moved to dismiss:
1.the members of the School Committee as to all counts;
2. the defendants Joseph Bage, the Superintendent of Schools (“Bage”), Kenneth Cardone, Principal of the School (“Cardone”), and Dr. Kenneth Sennett, Senior Director for Pupil Services (“Sennett”) in their individual capacities (allowing them to remain as defendants in their official capacities only);
3. Count I of the complaint, alleging violation of Doe’s right to freedom of expression in the public schools guaranteed under G.L.c. 71, §82;
4 Count II of the complaint, alleging violation of Doe’s right to personal dress and appearance guaranteed under G.L.c. 71, §83;
5. Count V of the complaint, alleging violation of Doe’s right to be free from disability discrimination guaranteed by Article CXIV of the Declaration of Rights of the Massachusetts Constitution; and
6. Count VI of the complaint, alleging a deprivation of due process under G.L.c. 76, §17.
This Court will address each aspect of this motion in turn.
I. The School Committee Defendants
All that the plaintiff currently alleges with respect to the School Committee defendants is that they promulgated or are otherwise responsible for the Dress Code for the Brockton Schools. This Dress Code declares that certain types of clothing — mesh shirts, tank tops, short shorts, spandex shorts (unless covered), and cut-off jerseys or blouses — "will not be tolerated at any time." (Emphasis in original.) In addition, the Dress Code declares that “[c]lothing which could be disruptive or distractive to the educational process or which could affect the safety of students" will also not be tolerated.[3]
In the complaint, Doe does not challenge the facial validity of the Dress Code. Doe does not claim a right to wear mesh shirts, tank tops, short shorts, spandex shorts (unless covered), or cut-off jerseys or blouses. Nor does Doe contend that the School, within constitutional and statutory bounds, may not prohibit the wearing of clothing which is disruptive or distractive to the educational process. Indeed, in the complaint, Doe alleges that “to the best of Pat’s knowledge, her appearance has never caused undue disruption, disorder, or distraction within the school.”
Rather, Doe challenges the application of the Dress Code to her by the defendants Bage, Cardone, and Sennett. In short, Doe contends that she has a legal right to wear clothing typically worn by girls, and the unfavorable reaction to her dress by fellow students and teachers may not lawfully constitute the disruption or distraction that justifies the School to prevent her from wearing this clothing. In addition, Doe contends that this Dress Code may not lawfully be interpreted to permit a School policy barring any biological male from wearing female clothing for fear of such disruption. Plaintiffs attorney concedes that, as of now, there is no evidence that any member of the *288 School Committee participated in applying the Dress Policy to Doe. Specifically, the plaintiff does not presently allege that the School Committee, or any Member of the Committee, directed either Bage, Cardone, or Sennett to prohibit Doe’s female clothing or participated with them in making any decision specific to Doe. The plaintiff concedes that there can be no liability against the School Committee defendants if all that they did was promulgate or endorse the Dress Policy in general; liability requires proof that they caused the Dress Policy to be applied to Doe in the allegedly forbidden manner.
Therefore, this Court allows the motion to dismiss the School Committee defendants — John Yunits, Maurice Hancock, Wayne Carter, George Allen, Mary Gill, Dennis Eaniri, Kevin Nolan, and Ronald Dobrowski— without prejudice. If in discovery the plaintiff uncovers evidence that all or some of these School Committee members participated in the decision to apply the Dress Policy to Doe, the plaintiff may seek leave to amend the complaint to return all or some of these dismissed defendants as parties in the case.
2.The Defendants Bage, Cardone and Sennett in Their Individual Capacities
The defendants Bage, Cardone and Sennett move to be dismissed in their individual capacities, recognizing that they may still be held liable in their official capacities. For all practical purposes, they move to be released from personal liability for their conduct, but acknowledge that the Brockton Public Schools or the Ciiy may remain liable in damages if their conduct is ultimately found to be wrongful.[4]
Apart from judicial immunity, Massachusetts law does not recognize any absolute common-law immunity for public employees. Duarte v. Healy, 405 Mass. 43, 46 (1989). See Breault v. Chairman of the Board of Fire Commissioners of Springfield, 401 Mass. 26 (1987). Massachusetts law does recognize qualified immunity patterned after the federal qualified immunity under 42 U.S.C. §1983, but that immunity applies only to discretionary functions, not ministerial acts. Duarte v. Healy, 405 Mass. at 46. See also Cady v. Marcella, 49 Mass.App.Ct. 334, 339 (2000). Discretionary functions are limited to “discretionary conduct that involves policy making or planning.” Harry Stoller & Co. v. Lowell, 412 Mass. 139, 141 (1992). As the Supreme Judicial Act has explained, “[G]overnmental immunity does not result automatically just because the governmental actor had discretion. Discretionary actions and decisions that warrant immunity must be based on considerations of public policy.” Id. at 143. Consequently, many decisions made by public employees that we commonly recognize to involve the exercise of discretion, such as whether to remove a drunken motorist from the roadway, how to treat a patient in an emergency room, the implementation of state police disciplinary policies, and the monitoring of a probationer, have been deemed ministerial rather than discretionary for purposes of evaluating qualified immunity. Id. at 143-44, and cases cited.
It is not yet clear from the record whether Bage, Cardone and Sennett were performing a discretionary function or a ministerial act in barring Doe from School until she stopped wearing clothing commonly worn by teenage girls. To the extent that they contend they were simply applying the Dress Code and making a factual determination that Doe was “disruptive or distractive to the educational process,” this apparent exercise of discretion would likely be deemed ministerial rather than a. discretionary function that may entitle them to qualified immunity. To the extent that they contend they were making policy regarding the dress of students with gender identity disorder, their conduct may be deemed within the discretionary function and they may be entitled to qualified immunity. Since ibis not yet clear which position they are taking and even less clear which position a factfinder may conclude they were taking, it is premature to determine whether they may enjoy the benefits of qualified immunity. Therefore, the motion to dismiss Bage, Cardone, and Sennett, which is premised on their eligibility for qualified immunity, must be denied.
3. Count I of the Complaint
Count I alleges that the defendants have violated G.L.c. 71, §82, which protects “(t]he right of students to freedom of expression in the public schools of the commonwealth . . . , provided that such rights shall not cause any disruption or disorder within the school.” The statute defines “student” as “any person attending a public secondary school in the commonwealth,” but does not define “secondary school.” G.L.c. 71, §82. It is plain that a high school is a secondary school, and that an elementary school with grades one through six is not. See Pyle v. South Hadley School Comm., 423 Mass. 283 (1996) (determining whether a high school dress code violates G.L.c. 71, §82; Inhabitants of Alford v. Southern Berkshire Regional School District, 2 Mass.App.Ct. 98, 100 (1974) (“the words ‘elementary school’ in common usage includes grades one through six”). It is not at all clear whether a junior high school or a middle school, as we have in this case, is a “secondary school” within the meaning of G.L.c. 71, §82. Fortunately, this Court need not decide this issue because the plaintiff at the hearing agreed to the dismissal of this count without prejudice. If for some reason this litigation is not resolved before Doe graduates from junior high school and enters high school, and if the high school were to take the same position regarding Doe’s clothing as the junior high school, then Doe may move for leave to amend to return this count to her complaint.
4. Count II of the Complaint
Count II alleges that the defendants violated G.L.c. 71, §83, which provides, “School officials shall not abridge the rights of students as to personal dress and appearance except if such officials determine that *289 such personal dress and appearance violate reasonable standards of health, safely and cleanliness.” This statute, however, is a so-called “local option statute” that applies only to those cities and towns which have voted to accept it. G.L.c. 71, §86. The City of Brockton has not voted to accept §83, so the statute does not apply to its schools. As a result, as the plaintiff now recognizes, Count II of the complaint must be dismissed.
5. Count V of the Complaint
Count V alleges that the defendants have violated Article CXIV of the Declaration of Rights of the Massachusetts Constitution, which provides, “No otherwise qualified handicapped individual shall, solely by reason of his handicap, be excluded from the participation in, denied the benefits of, or be subject to discrimination under any program or activity within the commonwealth.” The defendants contend that, as a matter of law, a person, like Doe, with a gender identity disorder is not a “qualified handicapped individual” within the meaning of Article CXTV.
The language of Article CXTV is similar to the language of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 (“Federal Rehabilitation Act” or “FRA”). It differs primarily in that Article CXIV speaks of a “qualified handicapped individual” while the FRA speaks of a “qualified individual with a disability,” and the FRA refers to programs and activities administered by the federal government or receiving federal financial assistance rather than programs or activities “within the commonwealth.” The difference in the terminology between a “qualified handicapped individual” and a “qualified individual with a disability” has no practical consequence because the FRA defines an “individual with a disability” as “any person who (i) has a physical or mental impairment which substantially limits one or more of such person’s major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.” 29 U.S.C. §705(20)(B). The Massachusetts Legislature, in G.L.c. 151B, §1(17), defines an individual with a “handicap” in nearly identical language. While the Massachusetts definition of an individual with a “handicap” formally applies only to the laws against handicap discrimination in G.L.c. 151B, it would be foolhardy not to apply that same definition to Article CXIV. Consequently, for all practical purposes, in terms of their general definition, a “qualified handicapped individual” is also a “qualified individual with a disability.”
Prior to 1992, at least two federal courts refused to dismiss a claim brought under the Federal Rehabilitation Act by persons suffering from gender identity disorders.[5] See Blackwell v. U.S. Dep’t of Treasury, 639 F.Sup. 289 (D.D.C. 1986); Doe v. United States Postal Service, 1985 WL 9446 (D.D.C. 1985). Both courts examined the three alternative means by which a person may be found “handicapped” under the FRA, and concluded that the plaintiffs had stated a claim under the FRA, either because their gender identity disorder was a physical or mental impairment that substantially limited their ability to function, or because they were regarded as having such an impairment. Blackwell v. U.S. Dep’t of Treasury, 639 F.Sup. at 290; Doe v. United States Postal Service, 1985 WL 9446 at *2-3.
In 1992, perhaps in response to these court decisions, Congress amended the Federal Rehabilitation Act specifically to exclude from the protection of the statute individuals with “gender identity disorders not resulting from physical impairments.” 29 U.S.C. §705(20)(F)(i). No such exclusion has been added to Article CXIV.
The defendants contend that, since Article CXTV derived from the Federal Rehabilitation Act, this Court should interpret CXTV to incorporate all subsequent amendments to the FRA, even when the Massachusetts Legislature has not itself enacted such amendments. The Supreme Judicial Court has made it clear that this Commonwealth has a proud and independent tradition in protecting the civil rights of its citizens, and will not follow in lock-step federal civil rights law. See, e.g., Dartt v. Browning-Ferris Industries, Inc., 427 Mass. 1, 9-10 n.13 (1998) (“While we do on occasion consider judicial interpretations of Federal civil rights statutes instructive in our analyses of G.L.c. 151B, we have not always done so”); Labonte v. Hutchins & Wheeler, 424 Mass. 813, 816 n.5 (1997) (Massachusetts courts will look to see how federal courts have interpreted federal civil rights law for guidance in interpreting state civil rights law, but have no obligation to follow federal case law in this area). Simply because the United States Congress chose, after enacting the Federal Rehabilitation Act, to exclude from the definition of an “individual with a disability” those persons with “gender identity disorders not resulting from physical impairments” does not mean that this Court must define a “handicapped individual” under Article CXIV to exclude persons with these disorders.
Indeed, the better view is that Massachusetts, in contrast with the federal government, chose in Article CXIV to protect all persons who meet the definition of “qualified handicapped individuals” from discrimination in state programs, regardless of the specific nature of their handicap. Massachusetts did not choose to define specifically which handicaps were protected by law. Rather, it simply provided a generic definition of a “qualified handicapped individual” and allowed the courts to determine whether a plaintiff, based on that plaintiffs specific circumstances and the facts specific to his or her case, met that definition. There is wisdom to such an approach. It recognizes that, as our knowledge of genetics, biology, psychiatry, and neurology develops, individuals who were not previously believed to be physically or mentally impaired may indeed turn out to be so, and may warrant *290 protection from handicap discrimination.[6] It also recognizes that this may mean that persons who were previously thought to be eccentric or iconoclastic (or worse) and who were vilified by many people in our society may turn out to have physical or mental impairments that grant them protection from discrimination. Stated differently, the traits that made them misunderstood and despised may make them persons enjoying special protection under our law.
Applying the generic definition of a “qualified handicapped individual,” this Court cannot categorically say that Doe falls outside that definition. When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the factual allegations of the complaint and all reasonable inferences favorable to the plaintiff which can be drawn from those allegations. Fairneny v. Savogran, 422 Mass. 469, 470 (1996); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). “(The) complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief’ Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Genetic identity disorder is listed as a disorder in the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.) and therefore arguably may be found to be “a physical or mental impairment.” The plaintiff alleges that this impairment substantially limits several major life activities. In addition, plaintiff alleges that Doe, as a result of the clothing she wears and the manner she carries herself, is regarded as having such an impairment. This Court, on a motion to dismiss, must accept these allegations as true. In short, in view of the plaintiffs allegations, this Court cannot find that Doe is not a “qualified handicapped individual” entitled to the protections offered by Article CXIV. As a result, the defendants’ motion to dismiss Count V must be denied.
6. Count VI of the Complaint
Count VI alleges that the defendants violated G.L.c 76, §17, which declares that school authorities “shall not permanently exclude a pupil from the public school for alleged misconduct without first giving him and his parent or guardian an opportunity to be heard.” The defendants argue that this due process obligation is triggered only when a student is “permanently excluded” from school. Since the Complaint alleges only that Cardone and Sennett told Doe that she would not be allowed to attend School “if she were to wear any clothing that could be characterized as girls’ clothing or if she appeared wearing barrettes, hair extensions, bras, or other fashion accessories usually worn by girls” (Complaint at ¶34), the defendants contend that Doe has not even alleged a permanent exclusion and therefore is not entitled to a due process hearing under G.L.c. 76, §17. Doe counters that the ultimatum issued by Cardone and Sennett, for all practical purposes, was a constructive expulsion, because Doe, as a result of her gender identity disorder, could not comply with these conditions without endangering her mental health.
The defendants contend that a student cannot be deemed expelled from a School when the School sets conditions under which that student could return and the student has the ability to meet those conditions. In these circumstances, the student’s ability to return to school rests with the student; once she decides to accede to the School’s conditions, the School’s doors are open to her. This Court agrees with that proposition, but with one important amendment — the student must be able to meet those conditions without substantial risk to the student’s physical or psychiatric health.
In the context of employment, a constructive discharge may be found when the “new working conditions would have been so difficult or unpleasant that a reasonable person in the employee’s shoes would have felt compelled to resign.” GTE Products Corp. v. Stewart, 421 Mass. 22, 34 (1995) quoting Alicea Rosado v. Garcia Santiago, 562 F.2d 114, 119 (1st Cir. 1977). Although this Court knows of no case that considers constructive expulsion, it is logical to presume that the law would recognize its existence when the school imposes conditions for returning to school that are either impossible to satisfy or that, if satisfied, would be so dangerous or risky that a reasonable person would have felt compelled to remain out of school. Certainly, a student who is five feet tall may be deemed constructively expelled if the school administrators forbade her from returning until she became six feet tall, because she could not do anything to satisfy that condition. So, too, would a severely diabetic student be deemed constructively expelled if she were forbidden from taking insulin during the school day, because the student could not satisfy that condition without endangering her physical health. It is true that the student could choose to accept this life-threatening condition, but no reasonable person would make this choice so the law does not recognize it as a viable alternative. The plaintiff alleges that, in view of Doe’s gender identity disorder, coming to school in boys’ clothing is not a viable choice for her, because doing so would endanger her psychiatric health. Although, for purposes of a motion to dismiss the plaintiffs allegations are sufficient to establish this proposition, I note that there is evidence in the court file to support this allegation. The plaintiff, in litigating the motion for a preliminary injunction, submitted the affidavit of Gerald Mallon, a Professor at Hunter College School of Social Work, certified social worker, and founder of a program that provides services to gay, lesbian, bisexual, and transgender children. Professor Mallon wrote, “In my clinical experiences with transgendered children, I have seen children who have been significantly harmed by clinicians, caregivers, and other adults in children’s lives who insist on *291 ‘correcting’ gender variant children by attempting to make them more gender conforming.” In essence, the plaintiff alleges that requiring Doe to wear boy’s clothing to school would be as injurious to her psychiatric health as requiring a psychologically masculine boy to wear a dress to school.
Since this Court recognizes that there is such a thing as constructive expulsion and since the plaintiff has made allegations which, if proven, may establish that Doe was constructively expelled, this Court must deny the defendant’s motion to dismiss Count VI.
PLAINTIFF’S MOTION FOR LEAVE TO AMEND THE COMPLAINT
The plaintiff has moved for leave to amend the complaint to add the City of Brockton as a defendant. The plaintiff observes that, underG.L.c. 76, §16, “(a]ny pupil . . . who has been refused admission to or excluded from the public schools or from the advantages, privileges and courses of study of such public schools . . ., if the refusal to admit or exclusion was unlawful, may recover from the town ... in tort...” G.L.c. 76, §16.
This Court has already denied the defendants’ motion to dismiss Count VI, alleging constructive expulsion without due process, so it is appropriate in view of this statute to add the City of Brockton as a defendant if it is included within the statutory definition of a “town.” G.L.c. 4, §7(34) declares that, “(i]n construing statutes the following words shall have the meanings herein given, unless a contrary intention clearly appears: . . . Town’ . . . shall include city.” Since no contrary intention clearly appears from G.L.c. 76, § 16, it is fair to infer that Doe, if she were to prevail on some or all of these claims, may be able to recover damages from the City of Brockton. Consequently, plaintiffs motion to amend must be allowed.
ORDER
For the reasons stated above, this Court ORDERS as follows with respect to the Defendants’ Partial Motion to Dismiss:
1. The defendants’ motion to dismiss the School Committee defendants — John Yunits, Maurice Hancock, Wayne Carter, George Allen, Mary Gill, Dennis Eaniri, Kevin Nolan, and Ronald Dobrowski — is ALLOWED without prejudice.
2. The defendants’ motion to dismiss Bage, Car-done, and Sennett in their individual capacities, premised on their eligibility for qualified immuniiy, is DENIED.
3. The defendants’ motion to dismiss Count I is ALLOWED without prejudice, with the agreement of the plaintiff.
4. The defendants’ motion to dismiss Count II is ALLOWED with the agreement of the plaintiff.
5. The defendant’s motion to dismiss Count V is DENIED.
6.The defendant’s motion to dismiss Count VI is DENIED
With respect to the Plaintiffs Motion for Leave to Amend the Complaint to Add the City of Brockton as a Defendant, the motion is ALLOWED.

Doe is a pseudonym used for purposes of this case with the approval of the Court.

This Court will respect that preference in this decision. From this point forward, when any gender pronoun is used with respect to Doe, it shall be the female pronoun.

The Dress Code also prohibits “[w]earinig or displaying clothing which has explicitly violent, obscene, or sexually suggestive language or designs, which advertises alcohol or illegal substances, or which identifies students as members of a gang.” This portion of the Code does not appear to be at issue in this case.

It should be noted that, under G.L.c. 258, §9, public employers may indemnify public employees, such as these individual defendants, in an amount not to exceed $1,000,000 for any judgment “by reason of any act or omission which constitutes a violation of the civil rights of any person under any federal or state law," provided the public employee was acting within the scope of his employment and did not act “in a grossly negligent, willful or malicious manner.”

One plaintiff was a transvestite; the other was a transsexual.

I note that, even under the FRA, an individual with a gender identity, disorder “resulting from physical impairments” is not excluded from the definition of an “individual with a disability.” 29 U.S.C.A. §705(20)(F)(i). In light of the remarkable growth in our understanding of the role of genetics in producing what were previously thought to be psychological disorders, this Court cannot eliminate the possibility that all or some gender identity disorders result “from physical Impairments” in an individual’s genome.