David W. EISENBERG, Plaintiff,

v.

Edmund F. WALL, Eugene Terry McSweeney, Edward J. Weiner, Karen L. Springer, Scott Carpenter, Margery R. McDonald, Andy Ungerson, Lee Callahan, Lawrence R. Rittenberg, Catherine E. Read, James J. Dion, Steven Yetman, Sharon Walker Mastenbrook, Heidi L. Porter, Town of Burlington Board of Health and Town of Burlington, Defendants.

Civil Action No. 07–10087–NMG.

United States District Court,
D. Massachusetts.

March 12, 2009.

Megan B. Bayer, Gregg J. Corbo, Kopelman & Paige, PC, Boston, MA, Juliana deHaan Rice, Town of Arlington, Legal Department, Arlington, MA, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

This is an action brought under the federal and state civil rights statutes, 42 U.S.C. § 1983 and M.G.L. c. 12, § 11I. The *pro se* plaintiff, David W. Eisenberg ("Eisenberg"), alleges that the Town of Burlington ("the Town") and the Burlington Board of Health ("the Board of Health" or "the Board" and together with the Town, "the municipal defendants") through their various officers (named as individual defendants), violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution and the corollary provisions of the Massachusetts Constitution. The alleged violations occurred in January, 2004, when inspectors executed an administrative search warrant at Eisenberg's home. The plaintiff alleges that 1) the warrant application contained false statements and misleading omissions, 2) the warrant was improperly executed because the search exceeded the scope of the warrant and 3) the Town, through its agents and servants, knowingly caused "the damage, dissipation, and destruction of property."

### I. *Background*

#### A. Factual Background

The events which precipitated this lawsuit began when the Board of Health received a complaint from a neighbor on January 14, 2004, that two elderly occupants of 11 Daniel Drive, Burlington, Massachusetts, had no heat. The occupants of that address were the plaintiff, Eisenberg, and his companion, Mary R. Hyde

("Hyde"), who is also the owner of the property. Defendants Karen Springer ("Springer"), Margery McDonald ("McDonald") and Scott Carpenter ("Carpenter") responded to the complaint by making a visit to the property that same day. Springer at that time was a Health Agent for the Board of Health, McDonald was (and is) the Director of the Burlington Council on Aging and Carpenter was (and is) a member of the Burlington Fire Department.

Upon arriving at the property those defendants observed a number of alarming conditions, including:

1) a car parked at the end of the driveway filled with rubbish emitting a foul odor;

2) old lawn furniture, scraps of furniture and metal piled high and blocking the driveway except for a narrow path to the garage;

3) overgrown landscaping that made the front door of the residence inaccessible;

4) a partially collapsed chimney; and

5) windows of the residence coated with ice.

Concerned by their observations, the defendants approached the house and knocked on the garage door. Eisenberg opened the garage and spoke with the defendants.

Inside the garage the defendants observed piles of debris leaving only a narrow path by which to enter the house. They informed Eisenberg that they were concerned about the ice on the windows and were checking to ensure that the residents had heat. At some point Ms. Hyde joined Eisenberg in the garage and responded that she was warm enough and that they were using space heaters and high wattage light bulbs to heat the home. Eisenberg also informed the defendants that the furnace was not operating and the chimney was in need of repair. Springer requested that Eisenberg and Hyde allow Carpenter to enter the house to determine whether the space heater units were safe, but Hyde would not accede.

Following their visit to the property, Springer and McDonald met with defendants Andy Ungerson ("Ungerson"), the Burlington Building Inspector, Lee Callahan ("Callahan"), then-Assistant Fire Chief, and Lawrence Rittenberg ("Rittenberg"), who at that time was Assistant Town Administrator. After conferring, those individuals determined that a fire hazard might exist at the Daniel Street property and that the Fire Department should apply for an administrative search warrant.

Callahan applied for such a warrant the next day. His accompanying affidavit was based on information provided to him by Springer and stated, *inter alia,* that 1) space heaters and high wattage light bulbs were being used to heat the house, 2) large amounts of combustible materials were present and posed a fire hazard and 3) the dilapidated chimney could cause a build up of carbon monoxide. The warrant was issued that same day by the Woburn District Court for the explicit purpose of inspecting the heating system.

The warrant was executed by defendants Springer, Ungerson, Callahan, Eugene Terry McSweeney ("McSweeney"), a member of the Board of Health, and Edmund Wall ("Wall"), who at that time was also a member of the Board. Upon arrival those defendants entered the house through the garage and observed an electric space heater and a 300 watt light bulb, which Eisenberg explained were being used to heat the garage and basement of the house. The space heater was connected to an extension cord that was apparently worn and the defendants observed paper, trash and other debris piled shoulder high throughout most of the garage.

The defendants proceeded into the basement of the house where they observed another electric space heater and more 300 watt light bulbs being used amongst large amounts of combustible material. Defendant Callahan observed that the boiler was in an obvious state of disrepair and Eisenberg informed the defendants that the hot water heater had not worked for a long time.

After the inspection was complete members of the Board of Health declared the house uninhabitable and arranged for Eisenberg and Hyde to move to a hotel at Town expense for two weeks. Prior to leaving the house, Hyde and Eisenberg wanted assurances that the water pipes would be cared for and not allowed to freeze. Defendant Ungerson agreed to put antifreeze in the pipes and, with the consent of Eisenberg and Hyde, he entered the first floor of the unit to do so. Ungerson succeeded in putting antifreeze in the toilet but large amounts of debris prevented him from accessing the bathtub or locating the kitchen sink.

On the following day, January 16, 2004, the Board of Health convened an emergency meeting and voted to issue a condemnation order and declare the property unfit for human habitation. They ordered the occupants to vacate the property immediately and gave Hyde 30 days to correct State Sanitary Code violations. Despite the Board's order, little progress was made in remedying the violations over the next several months.

Eventually, on August 14, 2004, defendant Sharon Walker Mastenbrook ("Mastenbrook"), Director of Public Health for the Board of Health applied for a criminal complaint, which, after a probable cause hearing, issued on October 25, 2004. Hyde was arraigned on November 10, 2004, at which time the court ordered that she hire Homeworks, a contractor chosen and paid for by Hyde, to deliver a dumpster to the property and to fill the dumpster.

The criminal case against Hyde was eventually transferred to the civil docket and a hearing was scheduled for October 7, 2005, to assess the progress being made at the property. At that hearing, Paul Litchfield ("Litchfield"), a representative of the contractor hired by Hyde, reported that his progress was being delayed because Hyde and Eisenberg insisted on going through every item in the house before it could be disposed of. The court scheduled another hearing for October 21, 2005, and indicated that it expected significant progress to be made before that date.

At the scheduled hearing, Litchfield reported continued interference by Hyde and Eisenberg, prompting the District Attorney to file a complaint for contempt. The Court responded by enjoining Hyde and Eisenberg from being within 100 feet of the property and gave Litchfield the authority to clean the property and to remedy all Sanitary Code violations. Personal property that was removed by Litchfield was placed into storage and, on December 20, 2005, Mastenbrook determined that all violations had been remedied.

## B. Procedural History

Eisenberg filed his complaint on January 16, 2007, exactly three years after the relevant conduct is alleged to have occurred. On March 25, 2008, this Court allowed a motion to dismiss Paul J. Cote, a Massachusetts state employee, on the ground that plaintiff had not alleged any involvement of Cote or any other state officials. A separate motion to dismiss, brought by all of the defendants on the grounds that a parallel suit was pending before Judge Reginald C. Lindsay, was denied because this Court determined that this litigation had been filed first.

On June 27, 2008, defendants moved for summary judgment on all of plaintiff's claims (Docket No. 22). Despite being granted two extensions of time to respond, Eisenberg has failed to oppose that motion. On October 24, 2008, however, while defendants' motion for summary judgment was pending, Eisenberg moved to amend his complaint to add Paul Litchfield as a defendant (Docket No. 30).

Plaintiff moved to further amend (Docket No. 31) on November 10, 2008, seeking to add allegations that defendants Heidi Porter ("Porter"), an environmental engineer for the Board of Health, Steven Yetman ("Yetman"), Assistant Fire Chief, and Callahan instructed Litchfield to destroy certain property and vegetation belonging to Eisenberg. He also alleges that Litchfield, at the direction of the Town, intentionally trapped native rodents that Eisenberg and Hyde kept as "free-ranging pets." The defendants have opposed Eisenberg's second motion to amend but the motion to add Litchfield as a defendant is unopposed.

## II. *Defendants' Motion for Summary Judgment*

### A. Summary Judgment Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

Where a motion for summary judgment is unopposed, as it is in this case, that fact alone "does not automatically give rise to a grant of summary judgment." *Aguiar–Carrasquillo v. Agosto–Alicea,* 445 F.3d 19, 25 (1st Cir.2006). Rather, the court must be satisfied that the moving party "has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law." *Id.* (quoting *Lopez v. Corporacion Azucarera de Puerto Rico,* 938 F.2d 1510, 1517 (1st Cir.1991)).

### B. Application

Eisenberg's complaint alleges three distinct violations of his civil rights under state and federal law. He asserts that:

1) the administrative search of his Daniel Street property violated his rights under the Fourth Amendment because the authorizing warrant was based on an affidavit that contained

knowingly false statements and misleading omissions;

2) Town officials who executed the warranted exceeded its permissible scope; and

3) the Town's forcible removal and other actions taken pursuant to M.G.L. c. 111, § 127B violated his rights under the Fourteenth and Fourth Amendment and, to the extent that § 127B authorized such action, it is unconstitutional.

In their motion for summary judgment, the defendants offer a variety of reasons for why they are entitled to judgment as a matter of law, including: 1) the plaintiff has failed to serve all of the defendants properly, 2) the warrant was properly obtained, 3) the search did not exceed the scope of the warrant, 4) the individual defendants are entitled to qualified immunity and 5) no grounds exist for municipal liability.

### 1. Validity of the Administrative Search Warrant

 The Fourth Amendment protects citizens against unreasonable searches and seizures and ordinarily requires searches to be made pursuant to a warrant supported by probable cause. *See* U.S. Const. amend. IV.[1] Administrative searches are not exempt from the warrant requirement, *see Camara v. Municipal Court,* 387 U.S. 523, 534, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), but they are subject to a less stringent probable cause standard than criminal searches, *see Marshall v. Barlow's, Inc.,* 436 U.S. 307, 320–21, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). As with criminal search warrants, however, administrative warrants are justified where there is specific evidence of an existing violation of an administrative code or safety regulation. *See id.*

 The Fourth Amendment's probable cause requirement implies that probable cause be demonstrated by truthful statements in an affidavit. *See Franks v. Delaware,* 438 U.S. 154, 165–66, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Thus, where probable cause is grounded in an affiant's "deliberate falsehood[s]" or statements made with "reckless disregard for the truth" the resulting warrant is invalid and the Fourth Amendment rights of individuals subject to its execution are violated. *See id.* at 171, 98 S.Ct. 2674.

 Here, Eisenberg has alleged two specific grounds for finding the warrant invalid. First, he claims that the affidavit in support of the warrant contained the knowingly false statement that Hyde's car, parked in the driveway, was "penetrating an odor." Second, he asserts that the affidavit contained misleading omissions because it did not mention water damage that was allegedly caused by the Town in 2001. Upon examination, this Court determines that neither of those alleged defects is fatal to the warrant.

With respect to the alleged false statement about an odor emanating from Hyde's car, this Court notes that the statement appears nowhere in the copy of the warrant affidavit submitted by the defendants. The affidavit does, however, reference exhibits, most of which have not been submitted to the Court. Nevertheless,

---

1. Notwithstanding defendants' failure to address Article Fourteen of the Massachusetts Constitution in the memorandum in support of their motion for summary judgment (despite the complaint's clear invocation of the "corollary parts of the Massachusetts Constitution") this Court concludes that the situations in which Article 14 is more protective than the Fourth Amendment are not implicated in this case. *See Commonwealth v. Garner,* Nos. 35026–27, 35314–17, 1997 WL 339122, at *6–12 (Mass.Super. June 10, 1997) (discussing areas in which Fourth Amendment and Article Fourteen diverge).

even were this Court to assume that the statement at issue is contained in those exhibits and is incorporated by reference into the affidavit, Eisenberg's challenge fails because the only evidence before this Court indicates that the statement about a "penetrating" odor is true.

Defendant Springer has submitted an affidavit in which she affirms under oath that she observed Hyde's car "filled with rubbish penetrating an odor even in the cold temperatures." Eisenberg has submitted no evidence to refute that statement. Therefore, the statement cannot be ruled a "deliberate falsehood" or to have been made with "reckless disregard for the truth" which would have rendered the warrant invalid. *See Franks,* 438 U.S. at 171, 98 S.Ct. 2674.

The alleged "misleading omissions" also provide no help to Eisenberg. The fact that the Town may have caused water damage to the property some three years before the search in question is entirely irrelevant to the magistrate's finding that there was probable cause to believe that health and safety hazards existed at the property. *See United States v. Rumney,* 867 F.2d 714, 720 (1st Cir.1989) (noting with respect to omissions that, "[t]he real issue is whether, even had the omitted statements been included in the affidavit, there was still probable cause to issue the warrant").[2]

Finally, apart from the alleged false statement and misleading omission, the plaintiff does not appear to challenge the magistrate's finding of probable cause. Nor would such a challenge succeed because the warrant demonstrates ample grounds for probable cause.

## 2. Scope of the Search

■ Eisenberg asserts that the scope of the search also violated his Fourth Amendment rights because, although the warrant explicitly authorized only inspection of the heating system, the search extended "pretty much throughout the premises." The evidence before this Court, however, leads to the inevitable conclusion that the search did not exceed the scope authorized by the warrant.

As an initial matter, this Court notes that the warrant is ambiguous in authorizing entry to inspect the "heating system." Specifically, it is unclear whether the heating system refers to the home's non-functioning furnace or, as the defendants suggest, to the system designed by Eisenberg and Hyde consisting of space heaters and 300 watt light bulbs. Under either interpretation, however, it is clear that the officials executing the warrant did not exceed its scope.

From the affidavits submitted by the defendants, it appears that officials entered the home through the garage because the front door was inaccessible. From there they proceeded into the basement, where they observed a non-functioning boiler and a space heater and high wattage light bulbs being used for heat. At that point the house was declared uninhabitable and the search was suspended. Although defendant Ungerson entered the first floor of the unit to put antifreeze in the pipes, he did so with the express permission of Eisenberg and Hyde. *See United States v. Vanvliet,* 542 F.3d 259, 264 (1st Cir.2008) ("[c]onsensual searches are a recognized exception to the Fourth

---

2. Although Massachusetts courts have suggested that Article Fourteen of the Massachusetts Constitution may call for invalidation of a warrant based solely on a showing of deliberate falsehood, without regard to the statements relevance to probable cause, *see Com-*

*monwealth v. Nine Hundred & Ninety-Two Dollars,* 383 Mass. 764, 422 N.E.2d 767, 771 (1981), they have not indicated that such protection would extend to wholly irrelevant *omissions* of the kind asserted here.

Amendment's warrant requirement"). Thus, the evidence demonstrates that the scope of the search was properly confined to what was authorized by the warrant.

### 3. Fourteenth Amendment Violations

In addition to asserting that the administrative search of his residence violated his Fourth Amendment rights, Eisenberg also contends that his Fourteenth Amendment rights were violated by the Town and the individual defendants. Although his claims are somewhat ambiguous, Eisenberg apparently asserts that 1) M.G.L. c. 111, § 127B, which authorizes boards of health to order occupants to vacate and clean dwellings deemed unfit for human habitation, is unconstitutional and 2) the defendants, acting pursuant to that statute and "through their respective agents and servants, knowingly caused the damage, dissipation, and destruction of property" including rare maps and books.

#### i. Individual Defendants

■■■ With respect to the individual defendants, although Eisenberg does not identify which of them was responsible for the alleged destruction of his property, his claims against any of those individual defendants are barred by the doctrine of qualified immunity. Qualified immunity protects public officials from civil liability and the burdens of litigation for performing discretionary acts that a reasonable official would believe lawful. *See Rivera Rodriguez v. Beninato*, 469 F.3d 1, 4 (1st Cir.2006) ("Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct.

1092, 89 L.Ed.2d 271 (1986)); *see also Duarte v. Healy*, 405 Mass. 43, 537 N.E.2d 1230, 1232 (1989) (applying standard for qualified immunity under § 1983 to claims under M.G.L. c. 12, § 11I)). Here, Eisenberg's complaint acknowledges that the defendants "[c]laim[ed] authority under [M.G.L. c. 111, § 127B]" and thus a reasonable official, similarly situated, would not have understood his or her acts to be violative of plaintiff's constitutional rights. *See id.*

#### ii. Municipal Defendants

■■■ With respect to the Town and the Board of Health, § 1983 liability for those defendants cannot be premised on a theory of *respondeat superior* but, rather, plaintiff must show action undertaken pursuant to a policy or custom adopted by the Town. *See Young v. City of Providence*, 404 F.3d 4, 25 (1st Cir.2005).[3] Because Eisenberg has identified no such policy or custom authorizing the destruction of property by Town employees, the municipal defendants cannot be liable for those alleged actions.

■■■ Although the municipal defendants are not liable for the acts of their employees, Eisenberg's complaint can also be read as directly challenging the Board of Health's order of condemnation under M.G.L. c. 111, § 127B. A challenge to official action taken by an authorized body provides sufficient basis for a § 1983 claim. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Defendants fail to address the plaintiff's constitutional challenge to

---

**3.** Plaintiff's state law civil rights claims pursuant to M.G.L. c. 12, § 11I are inapplicable to the municipal defendants because "a municipality is not a 'person' covered by the Massachusetts Civil Rights Act." *See Howcroft v. City of Peabody*, 51 Mass.App.Ct. 573, 747

N.E.2d 729, 744 (2001) (citing M.G.L. c. 12, §§ 11H, 11I); *see also Kelley v. LaForce*, 288 F.3d 1, 11 n. 9 (1st Cir.2002) ("under Massachusetts law a municipality cannot be sued under the [Massachusetts Civil Rights Act]" (citation omitted)).

M.G.L. c. 111, § 127B in their motion for summary judgment.

Eisenberg specifically challenges, on its face and as applied, the constitutionality of the fourth sentence of § 127B, which provides:

> If the owner or occupant refuses to comply with [an order by the board of health that the property be brought into compliance with health code regulations], the board of health may cause the premises to be properly cleaned at the expense of the owner or occupant, remove the occupant forcibly and close up the premises, or it may issue a written notice to the owner of such building, as appearing in the current records of the assessors of such town, setting forth the particulars of such unfitness and requiring that the conditions be remedied.

M.G.L. c. 111, § 127B. Eisenberg asserts that the statute is unconstitutional because it allows for the destruction of private property "merely for interior cosmetic reasons not even visible to the outside public without a finding (or even contention) of a threat to the public."

Eisenberg's assertions do not support a constitutional challenge because they are contrary to the plain language of the statute and the undisputed facts of this case. The statute does not authorize boards of health to take action for interior cosmetic reasons but rather requires a finding that a dwelling

> (a) is unfit for human habitation, (b) is or may become a nuisance, or (c) is or may be a cause of sickness or home accident to the occupants or to the public. . . .

M.G.L. c. 111, § 127B. Thus, on its face the statute does not authorize the objectionable conduct of which Eisenberg complains.

Nor does the evidence before this Court support the conclusion that the Board of Health acted for merely cosmetic reasons

in this case. Defendants have proffered ample evidence, in the form of affidavits and photographs, demonstrating that the plaintiff's home was unfit for human habitation and posed a grave and immediate danger to its occupants. The residence was filled with garbage and other combustible debris, had no viable heating system or hot water, and was being kept warm with space heaters and 300 watt light bulbs. The conditions created a clear fire hazard that required immediate attention and the Town and its employees responded in commendable fashion.

In sum, Eisenberg alleges a constitutional violation that is not supported by the facts before the Court or the language of the statute. Consequently, this Court need not consider whether the hypothetical circumstances he suggests could withstand constitutional scrutiny.

### III. *Plaintiff's Motions to Amend the Complaint*

Since the filing of the defendants' motion for summary judgment, the plaintiff has filed two motions to amend his complaint.

#### A. Legal Standard

 A party seeking to amend a pleading after a motion for summary judgment has been filed by its opponent faces a more stringent standard than is ordinarily applied under the liberal amendment policy of Fed.R.Civ.P. 15. As this session has previously noted, where a party desires to amend a complaint after an opponent has moved for summary judgment, the proposed amendment must be supported by "substantial and convincing evidence." *Revere v. Boston/Logan Airport Assocs. LLC,* 443 F.Supp.2d 121, 125 (D.Mass. 2006) *citing Adorno v. Crowley Towing & Transp. Co.,* 443 F.3d 122, 126 (1st Cir. 2006). The party seeking to amend must

demonstrate good cause, *Steir v. Girl Scouts of the USA,* 383 F.3d 7, 12 (1st Cir.2004), and leave to amend is not warranted where such amendment would be futile. *Resolution Trust Corp. v. Gold,* 30 F.3d 251, 253 (1st Cir.1994).

## B. Motion to Amend to Add a Party Defendant

█ In his first motion to amend, Eisenberg seeks to add Paul Litchfield ("Litchfield") as a defendant. Litchfield was the contractor selected by Hyde to clean up the property after she was ordered to do so by the state court. Because Litchfield is not a state actor, claims against him are not authorized by § 1983 and, consequently, this Court will not allow Eisenberg to amend his complaint to add such claims.

Although the legal basis of his claims against Litchfield are less than clear, Eisenberg acknowledges that such claims can be brought only pursuant to this Court's supplemental jurisdiction. Although 28 U.S.C. § 1367(a) authorizes jurisdiction over state claims that are sufficiently related to a plaintiff's federal claims, § 1367(c)(3) specifically provides that

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction.

Because this Court concludes that all of Eisenberg's federal claims must be dismissed, permitting Eisenberg to amend his complaint to add state law claims and thus remain in federal court is ill-advised. Accordingly, plaintiff's motion to amend to add Litchfield as a defendant will be denied.

## C. Motion to Further Amend

In his most recent motion to amend, Eisenberg seeks to add allegations of specific conduct against several named defendants and the proposed defendant, Litchfield. Specifically, he asserts that 1) the defendant Heidi L. Porter ("Porter"), an environmental engineer for the Board of Health, instructed Litchfield to destroy certain cans of solvents without justification, 2) defendants Callahan and Yetman instructed Litchfield to destroy shrubbery and other vegetation around the windows of his home and 3) Litchfield intentionally and lethally trapped rodents that Eisenberg and Hyde kept as "free-ranging pets."

Eisenberg's motion will be denied because amending the complaint in the manner proposed would be futile. As explained above, this Court will not entertain claims against Litchfield. With respect to the existing defendants, Eisenberg's amended claims would be futile because, as explained above, those defendants are entitled to qualified immunity and nothing in the amended claims alters that conclusion.

### ORDER

In accordance with the foregoing, defendants' motion for summary judgment (Docket No. 22) is **ALLOWED** and plaintiff's motions to amend the complaint (Docket Nos. 30 and 31) are **DENIED**. **So ordered.**